## COMMONWEALTH vs. KENNARD C. KOBRIN.

Suffolk. March 4, 1985. — July 2, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Medicaid. Contempt. Psychotherapist. Practice, Criminal,* Grand jury proceeding. *Evidence,* Communication between patient and psychotherapist, Privileged communication. *Privacy.*

Discussion of the application of the psychotherapist-patient privilege of G. L. c. 233, § 20B, in relation to an investigation by a special grand jury into alleged Medicaid fraud. [288-292]

In pursuing an investigation into alleged Medicaid fraud, a special grand jury could properly require a psychiatrist, consistent with his patients' privilege under G. L. c. 233, § 20B, to submit to it those portions of his records documenting the times and lengths of patient appointments, fees, patient diagnoses, treatment plans, and somatic therapies, but not those portions of his records reflecting any patient's thoughts, feelings, or impressions, or containing the substance of any psychotherapeutic dialogue, or exposing personal relationships of no concern to legitimate investigation. [292-295]

ADJUDICATION of contempt in the Superior Court Department by *James P. Donohue,* J., on May 31, 1984.

After proceedings in the Appeals Court before *Rudolph Kass,* J., the Supreme Judicial Court granted a request for direct appellate review.

*Robert A. Griffith* for Kennard C. Kobrin.

*Jonathan Brant (Marjorie Heins* with him) for the interveners.

*Michelle A. Kaczynski,* Assistant Attorney General (*Kenneth Bowden,* Assistant Attorney General, with her) for the Commonwealth.

*Joel I. Klein & Richard G. Taranto,* for Massachusetts Psychiatric Society, amicus curiae, submitted a brief.

ABRAMS, J. Dr. Kobrin, a practicing psychiatrist, was adjudged in contempt in the Superior Court for refusing to submit complete medical records to a grand jury investigating allega-

tions of Medicaid fraud. Dr. Kobrin claimed that, on the basis of the psychotherapist-patient privilege, G. L. c. 233, § 20B (1984 ed.), he was not permitted to disclose those portions of the subpoenaed medical records which concerned communica-tions between him and his patients relating to diagnosis and treatment. We vacate the judgment of contempt and remand this matter to the Superior Court.

There is no dispute as to the procedural background. On May 9, 1984, a Suffolk County special grand jury, investigating alleged violations of the Medicaid False Claim Act, G. L. c. 118E, §§ 21A-21G (1984 ed.), issued a summons to Dr. Kobrin.[1] As revised two days later, the summons included a subpoena duces tecum that demanded the production of all Dr. Kobrin's appointment books and calendars as well as all records relating to the treatment or billing of Dr. Kobrin's Medicaid patients.[2] Dr. Kobrin immediately undertook to consult his Medicaid patients to determine whether they wished to assert their statutory privilege to prevent disclosure of communica-tions between them and Dr. Kobrin. Twenty-seven patients submitted written invocations of the psychiatrist-patient privilege.[3]

[1] The Medicaid fraud control unit of the office of the Attorney General "conducts [its] investigation, in part, by invoking the powers of the grand jury." *In re Grand Jury Investigation*, 441 A.2d 525, 531 (R.I. 1982), quoted in *Stornanti* v. *Commonwealth*, 389 Mass. 518, 522 (1983).

[2] Item 2 of the subpoena requested "[a]ny and all books, records, docu-ments and other writings of whatever nature and kind which concern, refer, or in any way relate to the treatment of, billing of, or payment by or on behalf of any medicaid patients or to any bill or invoice submitted to the Department of Public Welfare for services rendered to those patients, whether or not this treatment, billing, or payment occurred during the period mentioned in paragraph 1, above. These books, records, documents and other writings shall include, but are not limited to, all patient records, all patient medical histories, all records of diagnosis and treatment, all work-sheets, all x-rays, all x-ray records, all records of medications administered or prescribed including strength, dosage, and regimen, all test results, all laboratory reports, and all invoices from any laboratory."

[3] Each patient signed a form which read as follows: "I understand that my psychiatric medical records have been summoned to the Suffolk County Grand Jury. Pursuant to Chapter 233, Section 20B, I hereby invoke my psychotherapist-patient privilege and ask that my medical records not be produced."

Dr. Kobrin then filed a motion to quash "so much of the summons as request[ed] the privileged communications."[4] A judge of the Superior Court denied the motion and ordered the production of the subpoenaed records. Dr. Kobrin immediately requested relief from a single justice of this court under G. L. c. 211, § 3 (1984 ed.). That request was similarly denied. Dr. Kobrin was called to testify before the grand jury on May 31, 1984. At that time, he produced only his appointment books[5] and "sanitized" copies of patients' charts, stating that his "patients [had] validly exercised this psychotherapist-patient privilege and [have] thereby prevented me from voluntarily surrendering these records."

That same day, the Commonwealth moved to hold Dr. Kobrin in civil contempt. After a hearing, the judge granted the motion and remanded Dr. Kobrin to the custody of the sheriff. Dr. Kobrin appealed the contempt citation, and a single justice of the Appeals Court ordered "that a stay of the judgment of contempt be continued provided that the petitioner, Dr. Kobrin, deliver to the clerk of this court by June 12, 1984, originals of all the records under summons." The records were to be impounded. While the single justice held that all the records under summons were to be turned over to the grand jury, the parties were to submit a plan before June 14, 1984, to protect the confidentiality of patient communications.

Dr. Kobrin deposited the records as ordered. On June 13, 1984, he submitted his proposed plan to the single justice of the Appeals Court. Though preserving his objection to any disclosure of his patients' communications, Dr. Kobrin proposed that the Commonwealth be required to demonstrate "a particularized need for each record and an indication of what information the Commonwealth believes the record contains, the need for that information and an assurance to the court that

---

[4] Dr. Kobrin also moved for additional time to communicate with those patients he had not yet been able to reach and to excise from the subpoenaed appointment books the names and appointments of all non-Medicaid patients.

[5] Dr. Kobrin also refused to produce certain portions of one of his appointment books because they contained the appointments of another psychiatrist. This appointment book is not at issue on this appeal.

the information cannot be obtained anywhere else by less intrusive methods, including the interview of the patient." Even then, Dr. Kobrin suggested, the court might "release only that portion of the record meeting the conditions . . . with strict orders to keep all such information strictly confidential." The Attorney General objected to this proposal.

On June 26, 1984, the single justice of the Appeals Court received and allowed a motion to intervene brought on behalf of patients of Dr. Kobrin who wished to assert the psychotherapist-patient privilege. After further argument, the single justice of the Appeals Court rejected Dr. Kobrin's proposal. He ordered that one copy of the disputed patient records be released unedited to the Attorney General; patient names were to be "whited out" but a cross-reference list of names to Medicaid numbers would be made and retained by the Commonwealth.

The records were released and have since been in the possession of the Attorney General.[6] Dr. Kobrin added to his appeal of the Superior Court contempt judgment an appeal to the full Appeals Court of the disclosure order issued by the single justice.[7] We granted the application for direct appellate review.

On appeal, Dr. Kobrin argues that the psychotherapist-patient privilege of G. L. c. 233, § 20B, is available to psychiatric patients participating in the Medicaid program.[8] He maintains

---

[6] With regard to mootness, the Commonwealth represented at oral argument that because the June 26, 1984, order of the single justice of the Appeals Court was unclear, the Commonwealth has not yet submitted the copy of Dr. Kobrin's records to the grand jury. The Commonwealth maintains, therefore, that "open-ended" issues remain. We need not address this argument. The questions raised on this appeal warrant our consideration because they are likely to recur, yet evade review. See *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973), and cases cited.

[7] Dr. Kobrin moved for protective orders to restrict use and dissemination of the patient communications. This motion was denied.

[8] Dr. Kobrin has both opportunity and incentive here to assert the rights of patients who may have "no effective way of asserting those rights in a manner that would prevent their violation." *Hawaii Psychiatric Soc'y, Dist. Branch of the Am. Psychiatric Soc'y* v. *Ariyoshi*, 481 F. Supp. 1028, 1037 (D. Hawaii 1979). See *Eisenstadt* v. *Baird*, 405 U.S. 438, 445-446 (1972). We therefore hold that Dr. Kobrin has standing to raise his patients' claims of privilege.

that neither the Federal government nor the Massachusetts Legislature has abrogated the privilege as it applies to Medicaid patients. He further asserts that the actual communications between a Medicaid patient and the psychiatrist are irrelevant to an investigation of Medicaid fraud and thus should be closed to inspection by the Commonwealth.[9]

The Commonwealth contends that invocation of the psychotherapist-patient privilege in the instant circumstances would hinder the Federal objective of verifying the provision of services for which Medicaid reimbursement is sought. The Commonwealth maintains that Federal Medicaid law and the psychotherapist-patient privilege are in conflict and that, under the supremacy clause of the Federal Constitution, the privilege must yield. While conceding that the "records may contain some patient communications intermingled throughout the notes of Dr. Kobrin," the Commonwealth urges that "[t]his commingling of patient communications with progress notes and other information specifically required to be kept by a provider should not allow the provider to circumvent the disclosure requirements of the law." We turn to the statutory provisions at issue.

Both Federal and State laws and regulations require Dr. Kobrin, as an approved Medicaid provider, to maintain certain records for audit and inspection. Title XIX of the Social Security Act mandates that a State plan for medical assistance "provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency . . . with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency . . . may

---

[9] Dr. Kobrin and interveners further argue that psychotherapist-patient communications are protected by the right to privacy under the Federal Constitution. Because we hold that, as a matter of State law, such communications deserve protection, we do not reach the Federal constitutional issue.

from time to time request." 42 U.S.C. § 1396a(a)(27) (1982).[10]
Thus, Massachusetts requires that all Medicaid providers
"maintain proof, subject to audit, of the actual deliverance of
services and goods to recipients for which bills are submitted."
G. L. c. 118E, § 20.[11]

At the same time, G. L. c. 233, § 20B, states: "Except as
hereinafter provided, in any court proceeding preliminary
thereto and in legislative and administrative proceedings, a
patient shall have the privilege of refusing to disclose, and of
preventing a witness from disclosing, any communication,
wherever made, between said patient and a psychotherapist
relative to the diagnosis or treatment of the patient's mental
or emotional condition." The statute defines "communications"
as including "conversations, correspondence, actions and oc-
currences relating to diagnosis or treatment before, during or
after institutionalization, regardless of the patient's awareness
of such conversations, correspondence, actions and occur-
rences, and any records, memoranda or notes of the foregoing."
*Id.*[12]

---

[10] The implementing regulations require each State Medicaid plan to re-
quire service providers to agree to "(1) Keep any records necessary to
disclose the extent of services the provider furnishes to recipients; (2) On
requests, furnish to the Medicaid agency, the Secretary, or the State
Medicaid fraud control unit (if such a unit has been approved by the Secretary
under § 455.300 of this chapter), any information maintained under para-
graph (b) (1) of this section and any information regarding payments claimed
by the provider for furnishing services under the plan . . . ." 42 C.F.R.
§ 431.107(b) (1984).

[11] Under Massachusetts regulations, providers "must keep such records
as are necessary to disclose fully the extent of services furnished to recipients,
and must furnish to the Department or the Medicaid Fraud Control Unit on
request such information and any other information regarding payments
claimed by the provider for furnishing services (*see* 42 U.S.C.
§ 1396a[a][27] and the regulations thereunder)." 106 Code Mass. Regs.
§ 450.205(A) (1983). Psychiatrists must comply not only with the general
"medical records" guidelines, 106 Code Mass. Regs. § 433.409(D) (1983),
but also with the requirements pertaining to "psychiatric medical records,"
106 Code Mass. Regs. § 433.425(D) (1983).

[12] The statute lists six exceptions to the general availability of the privilege,
none of which is at issue in this case.

The investigation of a psychiatrist for possible Medicaid fraud thus demands our consideration of two significant policies. First, "[t]he federal policy requiring disclosure of patient records for fraud investigations is very necessary to the continued viability of the Medicaid program." *In re Grand Jury Investigation*, 441 A.2d 525, 531 (R.I. 1982). Second, the Legislature in enacting G. L. c. 233, § 20B, acknowledged "'the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor.' We are not free to water down the legislative policy embodied in the statute . . . ." *Usen* v. *Usen*, 359 Mass. 453, 457 (1971), quoting *In re Lifschutz*, 2 Cal. 3d 415, 431 (1970). But we do not perceive a total conflict between these two policies or between the statutory provisions in which they are embodied. In our view, both the State's "compelling interest in ensuring that services and supplies for which it is being billed have been provided, and that the medicaid program is not being defrauded," *Hawaii Psychiatric Soc'y, Dist. Branch of the Am. Psychiatric Soc'y* v. *Ariyoshi*, 481 F. Supp. 1028, 1041 (D. Hawaii 1979), as well as "the general policy of the statute protecting the confidentiality of communications between a patient and psychotherapist," *Commonwealth* v. *Lamb*, 365 Mass. 265, 268 (1974), may be accommodated.

States have been afforded significant discretion in the implementation of Medicaid programs, particularly in the area of documentation. See, e.g., *In re Madeline Nursing Homes*, 694 F.2d 433, 447-448 (6th Cir. 1982); *Troutman* v. *Cohen*, 588 F. Supp. 590, 600-601 (E.D. Pa. 1984). Federal law demands only that Medicaid providers "keep such records *as are necessary* fully to disclose the extent of the services provided" to patients (emphasis supplied). 42 U.S.C. § 1396a(a)(27)(A). And although the language of G. L. c. 118E, § 20, is not identical to that of 42 U.S.C. § 1396a(a)(27)(A), the intent to adhere to the Federal standard is evident in the regulations promulgated pursuant to G. L. c. 118E, § 20. See note 11, *supra*. Thus, the Commonwealth may require a psychiatrist to keep, and, consequently, to disclose only those records "as

are necessary fully to disclose the extent of the services provided."

The Commonwealth argues that the "ferreting out of fraudulent practices," *In re Grand Jury Investigation, supra* at 532, requires unlimited access to the patient files of a psychiatrist. But none of the authorities cited by the Commonwealth supports the wholesale assault on privacy in its claim that psychiatric records in their entirety are "necessary fully to disclose the extent of the services provided."[13] The Commonwealth relies on *In re Grand Jury Investigation, supra*, for the proposition that the medical records in the possession of psychiatrists are obtainable by the grand jury in a Medicaid fraud investigation. But at issue in that case was the relation between the State's physician-patient privilege and the Federal Medicaid law. Only nonpsychiatric medical records were involved. Compare *Department of Social & Health Servs.* v. *Latta*, 92 Wash. 2d 812 (1979) (physician-patient privilege at issue, not psychotherapist-patient privilege). Similarly, we held in *Stornanti* v. *Commonwealth*, 389 Mass. 518 (1983), that a pharmacy voluntarily participating in the Medicaid program must produce Medicaid patient drug profile records, prescription records, and doctor's order forms when subpoenaed by a grand jury. We did not confront in that case, however, a countervailing mandate of confidentiality such as that expressed by the Legislature in G. L. c. 233, § 20B. The court in *Camperlengo* v. *Blum*, 56 N.Y.2d 251, 253 (1982), held that the statutorily-created physician-patient privilege did "not absolutely protect a [psychiatrist's] records of treatment of Medicaid patients from a subpoena of the State Department of Social Services

---

[13] The Commonwealth asserts its right to inspect Dr. Kobrin's "appointment books, which list patient names under a specific date; statement cards, which have the patient name, date of service, and Dr. Kobrin's customary and usual fee for the service; copies of his Medicaid bills (MA-7), which identified the patient, date of service, Dr. Kobrin's usual fee, and the amount billed Medicaid in the form of a service code; and patient charts which contain information concerning the patient's condition, diagnosis, medical history, treatment plan, long and short range goals, recipient's response to treatment, any medications prescribed, recommendations for referrals, in addition to patient communications."

issued in an investigation of billing practices." That court, however, specifically noted that, because the psychiatrist had abandoned any claim that the department's subpoena was overly broad, it had "no occasion to delineate the precise boundaries of the exception" to the physician-patient privilege. *Id.* at 256 note.

Such an occasion, however, is present in the case before us. We conclude that psychiatric records of certain patient communications are not "necessary fully to disclose the extent of the services provided." The critical issue in a Medicaid fraud investigation is whether the psychiatrist has accurately represented the number of patients seen, the frequency of patient visits, and the length of time per visit or psychotherapeutic session.[14] We fail to see how the Commonwealth's review of those portions of a psychiatrist's records that recite "the patient's most intimate thoughts and emotions, as well as descriptions of conduct that may be embarrassing or illegal," *Hawaii Psychiatric Soc'y, supra* at 1041, can be helpful to a determination whether the psychiatrist has in fact furnished a reimbursable service.[15] In short, "[t]here is no evidence that review by

---

[14] The Commonwealth does not represent that it seeks to accomplish anything more in the instant investigation than to verify Dr. Kobrin's billing practices for psychiatric services: The question of the medical necessity of those services is not before us. See 106 Code Mass. Regs. § 450.204 (1983). Thus, we do not examine the relationship between G. L. c. 233, § 20B, and Federal standards of disclosure that might govern in other contexts such as reviews of the medical necessity and quality of Medicaid services. See, e.g., 42 U.S.C. § 1396a(a)(30), (a)(33) (1983).

[15] At oral argument, the Commonwealth suggested that the fact that a medical record indicated only that the psychiatrist had given a patient a prescription on a given date might be evidence that the patient had not received psychotherapy. The validity of such an inference is questionable because psychiatric records often reflect only the barest outline of the treatment provided. See generally Slovenko, On the Need for Recordkeeping in the Practice of Psychiatry, 7 J. Psychiatry & L. 399 (1979). Psychiatric records "are becoming as stereotyped a production as the pleadings of an attorney." *Id.* at 421-422. Moreover, unrestricted State access to such records may induce psychiatrists to limit their recordkeeping even further to sparse and perfunctory notations. "Psychiatrists may be disinclined to record in their files extremely personal, sensitive confidences of a patient if they

the State of personal and confidential information contained in a psychiatrist's patient files is necessary to prevent fraud. The details of a patient's problems are not necessary to an evaluation of whether a psychiatrist is rendering services in the amount claimed." *Id.* at 1041-1042.

Even were we persuaded that such communications might in some as yet unexplained way assist in the detection of Medicaid fraud, we would be loth to approve their wholesale production before the grand jury. The Commonwealth concedes "the interest that the patients have in protecting the confidentiality of their communications to Dr. Kobrin and understands their concern in the release of this information." See *Stornanti* v. *Commonwealth*, 389 Mass. 518, 527 n.14 (1983) (Medicaid patients retain privacy rights). Furthermore, there is no suggestion that the Legislature intended that the privacy concerns underlying G. L. c. 233, § 20B, be abrogated in the face of an investigation under the Medicaid False Claim Act. "In respect to relevance . . . privacy interests . . . should be considered. . . . [A]s the relevance of a document or part of it [is] seen to be attenuated or remote, the existence of a personal interest in nondisclosure might well persuade a court against ordering production." *Ward* v. *Peabody*, 380 Mass. 805, 819 (1980).

Because their unrestricted production would implicate privacy interests without being necessary to a determination whether the Medicaid program has been defrauded, the "communications" of Dr. Kobrin's patients warrant protection. But the scope of protected "communications" in the context of a Medicaid fraud investigation may not be so broad as to embrace that information "necessary to satisfy the important public in-

---

know those files may be reviewed and copied by state officials at any time. The threat of searches may therefore decrease the likelihood that the very information most valuable to another treating psychiatrist, a history of the patient's emotional and mental problems, will be available." *Hawaii Psychiatric Soc'y, Dist. Branch of the Am. Psychiatric Soc'y* v. *Ariyoshi*, 481 F. Supp. 1028, 1042 (D. Hawaii 1979). See Slovenko, *supra* at 401-403. In any event, we conclude that notations regarding somatic therapy are not "communications" which must be shielded in an investigation of Medicaid fraud. See note 16, *infra*.

terest in seeing that Medicaid funds are properly applied." *Camperlengo* v. *Blum*, 56 N.Y.2d 251, 255-256 (1982). Concomitantly, any exception to the privilege of G. L. c. 233, § 20B, must be "no broader than necessary for effective oversight of the Medicaid program." *Id.* at 256. Accordingly, we conclude that the Commonwealth may properly request that Dr. Kobrin submit to the grand jury those portions of his records documenting the times and lengths of patient appointments, fees, patient diagnoses, treatment plans and recommendations, and somatic therapies.[16] Those portions of the records, however, which reflect patients' thoughts, feelings, and impressions, or contain the substance of the psychotherapeutic dialogue are protected and need not be produced. See *In re Pebsworth*, 705 F.2d 261, 262, 263 (7th Cir. 1983) (distinguishing between "fragmentary data" such as listing of patient visits or "in some cases, the patient's diagnosis" and "detailed psychological profiles of patients or substantive accounts of therapy sessions"). See also *In re Subpoena Served Upon Zuniga*, 714 F.2d 632, 640 (6th Cir.), cert. denied sub nom. *Zuniga* v. *United States*, 464 U.S. 983 (1983). Similarly, those portions of the records "possibly exposing personal relationships of no concern to legitimate investigation" shall remain unavailable. *Ward* v. *Peabody, supra* at 820. A psychiatrist need neither keep such records nor disclose them.[17]

In sum, a judge confronting the competing demands of the right to privacy under G. L. c. 233, § 20B, and the need to

---

[16] Somatic therapies are physical treatments such as the provision of medication or electroconvulsive therapy. In its pellucid amicus brief, the Massachusetts Psychiatric Society points out that "[w]here physical services are provided by psychiatrists, just as where they are provided by nonpsychiatric medical doctors, the likelihood that a record of those services will be necessary to document the actual deliverance of Medicaid reimbursement services is substantially greater than it is with respect to records of nonphysical therapy. Moreover, few, if any, private communications need be revealed in these circumstances."

[17] The Department of Public Welfare may wish to review its regulations regarding documentation of psychiatric services for the purpose of consistency. The department might require the psychiatrist, for example, to keep substantive accounts of therapy sessions separate from those records which may be subpoenaed.

supervise the disbursement of Medicaid payments for psychiatric services shall review the psychiatrist's records. Excerpts of those records which reveal that a patient with a given diagnosis saw the psychiatrist on a certain date for a certain length of time shall be released. The psychiatrist's observations of objective indicia of emotional disturbance may be released.[18] Notations of patient prescriptions, blood tests and their results (e.g., lithium carbonate levels), or the administration of electroconvulsive treatment shall be released. Indications of treatment plans (e.g., a recommendation of continuing psychotherapy or of medication) shall be released.

The psychiatrist's records of patient conversations shall be withheld. The judge may furnish the Commonwealth with a physical description of such notes. The judge might, for example, inform the Commonwealth that the psychiatrist's record of a particular date includes a one-page, handwritten report of a psychotherapy session, but the substance of that session may not be disclosed. If the medical record is devoid of such notations, the judge may so indicate.

We vacate the judgment of contempt as well as the disclosure order of the single justice of the Appeals Court. We remand this action to the Superior Court for a hearing on the redaction of Dr. Kobrin's records consistent with this opinion.

*So ordered.*

---

[18] Thus, notations that the patient has suffered any of the following may be released: disturbance of sleep or appetite; anergia; impaired concentration or memory; hopelessness; anxiety or panic; dissociative states; hallucinations; labile or flattened affect; or somatic symptoms such as headaches. The list is not meant to be exhaustive. Similarly, objective acounts of the patient's past medical and psychiatric histories shall be made available. Such histories may include earlier hospitalizations, treatments, and diagnoses but shall not include patient conversations.