In the Matter of the GRAND JURY SUBPOENA DUCES TECUM DATED DECEMBER 14, 1984, Y., M. D., P. C., Appellant, v EDWARD KURIANSKY, as Deputy Attorney-General of the State of New York, Respondent.

In the Matter of the GRAND JURY SUBPOENA DUCES TECUM DATED DECEMBER 14, 1984, X., M. D., Appellant, v EDWARD KURIANSKY, as Deputy Attorney-General of the State of New York, Respondent.

First Department, November 14, 1985

**APPEARANCES OF COUNSEL**

*Robert Dublirer* of counsel *(Michael L. Rice, Lawrence N. Gray* and *Shirley F. Norris* with him on the brief); *Edward J. Kuriansky, Deputy Attorney-General, pro se.*

*Gerald B. Lefcourt* and *Lawrence S. Goldman* of counsel *(Joshua L. Dratel* and *Roger Parloff* with them on the brief; *Gerald B. Lefcourt, P. C.,* and *Goldman & Hafetz,* attorneys), for appellants.

## OPINION OF THE COURT

SANDLER, J. P.

On December 14, 1984, New York County Grand Jury subpoenas duces tecum were issued by the office of the Deputy Attorney-General for Medicaid Fraud Control to petitioners X and Y, both psychiatrists who practice on the Lower East Side of Manhattan, and both Medicaid providers. The petitioners are under investigation for alleged fraudulent billings of Medicaid patients, the specific allegation being that each received payments for medical services alleged to have been rendered when the petitioners were physically located outside the United States.

The subpoena issued to petitioner X, a sole practitioner, directed him to produce before the Grand Jury records "as required by law to be kept" reflecting the evaluation and treatment of certain named patients and disclosing "the extent of care, services and supplies provided" to these patients under the New York State Medicaid program during the period of January 1, 1981 to December 31, 1983, inclusive.

The subpoena issued to petitioner Y, who since August 1980 has practiced as a professional corporation, directs "[a]ny Officer, Director or Managing Agent" of Y.P.C. to produce before the Grand Jury:

"1. All payroll records, including payroll journals, individual earnings cards, IRS forms 971, W-2 and W-4 and NYS Form WRS-2 for calendar years 1981, 1982 and 1983.

"2. Individual personnel files for all employees.

"3. Patient charts for all Medicaid recipients listed in Schedule 'A' annexed hereto."

Both petitioners moved in the Supreme Court, New York County, to quash the subpoenas on the grounds that compelled production of these privately held documents would violate their constitutional privilege against self-incrimination, and that the disclosure of the information sought would violate the constitutional right of privacy of their patients and the physician-patient privilege.

In two opinions, Criminal Term of the Supreme Court denied both petitioners' applications. Relying on the "required records" doctrine, the court held as to both petitioners that no 5th Amendment protection attached to records which are required by law to be kept and which are subject to governmental regulation and inspection. The court further ruled in

both cases that the physician-patient privilege yielded to Federal law and State regulatory provisions explicitly requiring physicians in the Medicaid program to maintain records and to produce them upon request to governmental authorities. With respect to Y, the court also found that Y could assert no 5th Amendment privilege under the principle that a corporation has no 5th Amendment privilege to assert.

We are in agreement with Criminal Term that petitioners' 5th Amendment claims are unavailing for the reasons set forth in the trial court's opinions. With regard to that part of petitioners' claim that rests on the physician-patient privilege, we modify to the extent of remanding to Criminal Term for an in camera inspection of the subpoenaed medical files with a view to determining whether or not, and if so to what extent, production of those records are "necessary to satisfy the important public interest in seeing that Medicaid funds are properly applied." *(Matter of Camperlengo v Blum,* 56 NY2d 251, 255-256.)

Turning first to petitioners' 5th Amendment claims, the thesis is advanced that in two recent decisions *(Fisher v United States,* 425 US 391; *United States v Doe,* 465 US 605, 104 S Ct 1237)* the Supreme Court ended the traditional content-oriented approach to 5th Amendment protection with two consequences asserted to be here dispositive. First, it is contended that in *United States v Doe,* the Supreme Court's determination that the 5th Amendment privilege does not apply to the contents of voluntarily prepared business records implicitly overruled the required records doctrine announced in *Shapiro v United States* (335 US 1), which in substance denied 5th Amendment protection to records required by law to be maintained. Secondly, it is argued that in *Fisher* and *Doe,* the Supreme Court stated that the 5th Amendment may be invoked with regard to the production of records whose contents are not privileged, where the authentication of the records implicit in the act of production may be testimonially incriminatory, and that this principle logically should be available to the custodians of corporate records and required records.

As to petitioners' first contention, we are not persuaded that the Supreme Court in *Doe (supra)* overruled, or intended to overrule, *Shapiro v United States (supra),* nor do we believe that the *Doe* decision is irreconcilable with the continued viability of the required records doctrine.

More substantial is petitioners' contention with regard to the alleged right under *Fisher* and *Doe (supra)* of custodians of corporate records and of required records to invoke the privilege with regard to production of such records where the act of production may be testimonially incriminatory. The issue has led to apparently divergent opinions among Federal Courts of Appeal. (*Compare, In re Grand Jury Matter,* 768 F2d 525 [3d Cir 1985], *with In re Two Grand Jury Subpoenae Duces Tecum,* 759 F2d 52.)

From a careful review of the Supreme Court's opinions in *Fisher* and *Doe (supra)*, it is clear that they do not set forth explicitly the principle contended for by the petitioners with regard to the production of corporate and required records by custodians. Nor are we persuaded that the analysis set forth in those opinions clearly points to the eventual adoption of the doctrine urged by petitioners.

In *Fisher (supra)* as was cogently observed in the dissenting opinion in *In re Grand Jury Matter* (768 F2d 525, 532 *supra*), the Supreme Court referred with approval to decisions which had denied the availability of the privilege against self-incrimination to custodians of corporate records who sought to avoid production of the records. We think it improbable that the Supreme Court in *Doe (supra)*, a case not presenting the issue, intended its analysis to overrule, without saying so, a well-established doctrine that the court had reaffirmed only a few years previously. In any event, we see nothing in the two decisions relied upon by petitioners to justify this court in departing from a principle which has been set forth explicitly by the New York Court of Appeals. *(See, e.g., Matter of Bleakley v Schlesinger,* 294 NY 312; *cf. Big Apple Concrete Corp. v Abrams,* 103 AD2d 609.)

The closest and most troublesome issue on this appeal is raised by the contention that the production of patient medical records, clearly demanded in the subpoenas duces tecum, would necessarily violate, and violate in a most disquieting way, the physician-patient privilege. CPLR 4504 (a) provides in pertinent part: "Unless the patient waives the privilege, a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." The principle is, of course, clearly established that the privilege is fully applicable to Grand Jury proceedings in the absence of any clear declaration of legislative intent to override the privilege

in particular situations. *(See, Matter of Grand Jury Investigation of Onondaga County,* 59 NY2d 130, 135.)

In *Matter of Camperlengo v Blum* (56 NY2d 251, *supra)* in which the issue was raised by the issuance of a subpoena duces tecum by the State Department of Social Services for the records of a psychiatrist concerning 35 Medicaid patients, the Court of Appeals addressed the question of "whether and to what extent the State and Federal regulatory provisions of the Medicaid program have * * * created an exception to the privilege" (at p 255). Reviewing the relevant statutory and regulatory provisions, the Court of Appeals noted in particular that the Federal Government requires States participating in the Medicaid program to provide for agreements with Medicaid providers under which the provider agrees: " '(A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency * * * may from time to time request' (US Code, tit 42, § 1396a, subd [a], par [27])" *(supra,* p 255). The court further noted that New York State regulations require such information to be kept by Medicaid providers for a minimum of six years after payment and made available to the appropriate agencies (18 NYCRR 540.7 [a] [8]).

From this review, the Court of Appeals concluded (56 NY2d, at pp 255-256): "[T]he Federal and State record-keeping and reporting requirements evidence a clear intention to abrogate the physician-patient privilege to the extent necessary to satisfy the important public interest in seeing that Medicaid funds are properly applied. Of course, this exception to the privilege is intended to be no broader than necessary for effective oversight of the Medicaid program." In *Matter of Doe v Kuriansky* (91 AD2d 1068, *affd* 59 NY2d 836), the principle set forth in *Camperlengo (supra)* was held to be equally applicable to a Grand Jury subpoena for medical records issued in the course of an investigation into Medicaid fraud by the Medicaid Fraud Control Unit of the Attorney-General's office.

The critical issue is the meeting of that part of the *Camperlengo* rule that found an intention to abrogate the physician-patient privilege "to the extent necessary to satisfy the important public interest in seeing that Medicaid funds are properly

applied." The circumstance that in *Camperlengo (supra)* the court sustained the subpoena in all respects does not seem to us dispositive of the question in view of the court's footnote observation (at p 256) that it had "no occasion to delineate the precise boundaries of the exception" since petitioner had abandoned on the appeal any claim that the subpoena was overly broad.

The unusual, indeed unique, character of the patients' privacy interests in the records of psychotherapeutic sessions gives to the issue presented a special urgency and quality. As the Court of Appeals observed in *Cynthia B. v New Rochelle Hosp. Med. Center* (60 NY2d 452, 459), psychiatric records "will often contain intimate details of past acts, hopes, fantasies, shames, and doubts that were divulged during treatment". Moreover, such records often include intimate observations and comments by patients with regard to identifiable third persons who themselves are in no way concerned with the Medicaid program, and whose strong interest in the preservation of the scrupulous confidentiality of records reporting such observations is not lightly to be disregarded. Indeed, it seems a reasonable concern that the psychiatric treatment of patients by Medicaid providers is likely to be adversely affected in many situations if it is understood by patients and therapists that what the patient says, and what the therapist records, may in unforeseeable contingencies be made known to others, notwithstanding the obligation of the officials receiving the records to maintain their confidential character.

Turning to the rule formulated in *Camperlengo* (56 NY2d 251, *supra*), and in particular to the meaning of the word "necessary" in that rule, we recognize that the court may have intended the word to refer back to that part of the United States Code which required Medicaid providers to agree to keep "such records as are necessary fully to disclose the extent of the services provided." So interpreted, the *Camperlengo* rule would effectively suspend the application of the physician-patient privilege with regard to records required by law and regulation to be maintained. We are persuaded, however, that the *Camperlengo* rule was more likely intended to impose a requirement of particularized need before the production of medical records otherwise protected by the privilege may be required. Although the question is not free from doubt, this conclusion seems to us implicit in the footnote in *Camperlengo* that the court had "no occasion to

delineate the precise boundaries of the exception" in view of that petitioner's abandonment of the issue of overbreadth. We observe that this was the view of *Camperlengo* taken by the Supreme Judicial Court of Massachusetts in *Commonwealth v Kobrin* (395 Mass 284, 479 NE2d 674 [July 2, 1985]) in an opinion which carefully and thoughtfully analyzed in an analogous context essentially the same issue that is here presented.

In the instant case the single concrete circumstance offered in support of the challenged subpoenas duces tecum, although stated to be not the only circumstance, is the allegation that the Deputy Attorney-General has information that petitioners obtained Medicaid reimbursement for services rendered while they were not physically present in this country. By itself this would establish the Grand Jury's clear right to receive records fixing the dates of treatment of the various patients as well as the times the treatments started and ended, matters as to which the privilege is in any event inapplicable. *(See, Matter of Grand Jury Investigation of Onondaga County,* 59 NY2d 130, 134, *supra; Henry v Lewis,* 102 AD2d 430, 437.) However, nothing specifically set forth by the Deputy Attorney-General appears to demonstrate a clear need for an examination of the petitioners' notes taken during psychotherapeutic sessions, or of the petitioners' diagnosis and evaluation of individual patients, evaluations often phrased in terms that would be damaging to patients if known to others, and that may in certain instances be painful to the patients themselves.

A judicial in camera examination of the subpoenaed medical records and personnel files is clearly necessary in order to identify those portions of the records that establish dates and times of treatment. If the in camera examination discloses a particularized need for production of parts of the medical records that would otherwise be protected by physician-patient privilege, and that impinge on the privacy interests of the patients and others, it will be incumbent on the Trial Term Judge to redact the records to be produced in a manner that would satisfy the needs of the Grand Jury investigation without unnecessarily breaching the privacy interests of the patients and others.

Illustratively we note that in *Commonwealth v Kobrin (supra),* the Supreme Judicial Court of Massachusetts suggested that, in lieu of directing the production of notes of psychotherapeutic sessions, a physical description of such notes should be furnished by the court that would indicate

their scope and extent but not the substance of the session. An examination of the records here may suggest to the Trial Term Judge other methods for reconciling the various interests involved. We also note that Trial Term's examination of the records may be assisted by further factual submissions by the parties.

Accordingly, the orders of the Supreme Court, New York County (Peter J. McQuillan, J.), Trial Term Part 92, entered May 10, 1985, denying the motions of petitioners to quash Grand Jury subpoenas duces tecum and ordering compliance, are modified, on the law, without costs, to vacate that part of the orders which denied the motion with regard to records embraced by the physician-patient privilege, and to remand to Trial Term for a judicial in camera examination of such records to determine whether, and if so to what extent, there is disclosed a particularized need for the production of privileged parts of the records.

SULLIVAN, MILONAS, KASSAL and ROSENBERGER, JJ., concur.

Orders, Supreme Court, New York County, entered on May 10, 1985, unanimously modified, on the law, without costs and without disbursements, to vacate that part of the orders which denied the motion with regard to records embraced by the physician-patient privilege, and to remand to Trial Term for a judicial in camera examination of such records to determine whether, and if so to what extent, there is disclosed a particularized need for the production of privileged parts of the records.