■ In the Matter of EDWARD J. KURIANSKY, Respondent, v UZI WEINBERG, Appellant.—Order (mandate) of the Supreme Court, New York County (Harold Rothwax, J.), entered February 13, 1986, which adjudged the respondent-appellant in contempt of court and sentenced him to 30 days' imprisonment, reversed, on the law and the facts and in the exercise of discretion, without costs, and the matter remanded for a hearing.

This proceeding arises out of an investigation of Medicaid fraud in New York County, in which the Medicaid special prosecutor, the petitioner-respondent herein, issued a subpoena duces tecum for evaluation and treatment records of patients to the respondent-appellant, a physician.

Initially, the physician, through counsel, raised various dilatory defenses, among others that the subpoena was burdensome and in violation of the physician-patient relationship. The Judge presiding denied the motion to quash and directed compliance. Thereafter, counsel for the physician contended that the physican did not have possession, custody or control of the subpoenaed documents and presented instead 3,800 pages of invoices to patients. The invoices did not have the substantial analysis of each patient which the subpoena sought or the treatment records.

The Judge presiding was, with good cause, perturbed by the dissembling which had taken place when the contention of lack of possession should have been raised initially. *(See, McPhaul v United States, 364 US 372.)* However, it may be that the physician's language difficulty in communicating with counsel was responsible. If in reality, respondent-appellant did not have possession and could not obtain possession, it would not seem to be in order to have him incarcerated.

Accordingly, we remand for a hearing on the question of the physician's knowledge as to actual location of the records and as to possession, custody or control thereof. Concur—Kupferman, J. P., Carro, Rosenberger and Ellerin, JJ.

Sullivan, J., dissents in a memorandum as follows:

Nothing in the record before us justifies the majority's speculation that respondent, who was represented by counsel at all times, may have been prevented by language difficulty from understanding what the subpoena served on him requested, or from asserting his lack of control over the documents sought. Indeed, the record is bereft of any evidence that respondent, a licensed physician and an assistant professor at New York University, who quoted the *New England Journal of Medicine* before he was sentenced for contempt, has any language difficulty at all, although, we are told, he does have a thick foreign accent. Furthermore, while his counsel claimed that he had difficulty conversing with respondent, at the appearance before Justice Rothwax when petitioner sought to have respondent held in contempt, the defense raised was that respondent no longer worked at the clinics where the records were kept and thus did not have access to them, although, as his attorney conceded, respondent never even telephoned the clinic to see if the records could be obtained. Thus, it is fairly obvious, the language difficulty excuse is merely a subterfuge.

A review of the chronology is helpful in placing respondent's noncompliance in perspective. Respondent was authorized to treat patients eligible to receive medical services under the New York State Medical Assistance (Medicaid) program, and to obtain payment therefor. On November 6, 1985, during the course of a Grand Jury investigation into Medicaid fraud, a subpoena was issued, returnable November 21st, directing respondent to produce: "Records, required to be maintained by law, which accurately reflect evaluation and treatment, from the date of first treatment until the present, of all Medicaid recipients treated on any day or days during the period commencing January 1, 1984 and ending August 31, 1985." The subpoena was served on November 7th.

On or about November 19th, respondent communicated with an attorney about representing him in connection with the subpoena and on the following day the attorney's firm was retained. By order to show cause respondent moved, on November 21st, to quash the subpoena on various grounds including that compliance would be "burdensome, oppressive and impossible [given the] * * * time constraints." In a supporting affidavit, dated November 20th, counsel stated that respondent had told him that "he cannot gather 18 months of patient records [and] separate the records of Medicaid patients from those of non-Medicaid patients * * * by Thursday, November 21st." Counsel further affirmed that respondent had

told him "that the records are voluminous, and they are not stored in one central location."

On January 23, 1986, Justice Rothwax denied the motion. A subsequent order, entered January 24, 1986 and served personally on January 29, 1986, directed respondent to "produce the records called for by the subpoena * * * before the Grand Jury * * * on the 30th day of January, 1986." Respondent has never appealed from that order.

Respondent appeared at the Grand Jury on January 30, 1986 with counsel, who handed the prosecutor a letter of the same date advising her that respondent "asserts all applicable privileges, including the privilege against self-incrimination."* Respondent then went before the Grand Jury, producing copies of approximately 3,800 Medicaid claim forms. After reviewing the documents, the prosecutor informed respondent and his counsel outside the Grand Jury room that the subpoena, which called for records "reflect[ing] evaluation and treatment", had not been complied with since respondent had failed to produce a single patient record in the 3,800 pages of Medicaid invoices. Counsel thereupon suggested that respondent be questioned about the missing medical records before the Grand Jury, an invitation which the prosecutor respectfully declined.

On January 31st, respondent's counsel met with the prosecutor at her office and informed her for the first time that respondent did "not have possession, custody or control of the [subpoenaed] documents", suggesting that "she seek them directly from * * * the clinic at which [he] used to work."

On the basis of respondent's willful disobedience of the January 24, 1986 order, the prosecutor moved by order to show cause to have him adjudicated in criminal contempt. In response, his attorneys cross-moved to dismiss on the basis of, *inter alia,* prosecutorial misconduct, a lack of willfulness in respondent's failure to comply, the interests of justice, an alleged lack of authority on the part of the prosecutor to issue the subpoena, and its alleged vagueness. The thrust of respondent's defense, however, was that he stopped working for the clinic one or two days before November 8th, roughly contemporaneously with the date of issuance of the subpoena, and

* Following established Court of Appeals authority *(People v Doe,* 59 NY2d 655), this court has recently reiterated the principle that there is no 5th Amendment privilege in medical records which are, by law, required to be kept. *(Matter of Grand Jury v Kuriansky,* 113 AD2d 49, *lv granted* 119 AD2d 1016; *Henry v Lewis,* 102 AD2d 430, 434.)

almost two weeks before its return date. Respondent, however, never claimed then that he no longer worked at the clinic, but rather, that it would be unduly burdensome to comply by November 21st. Thus, his defense of lack of control over the documents was available to him at the time he was served with the subpoena, and he failed to raise it. Implicit in his claim that he could not get the documents together by November 20th was an acknowledgement that he had control of the records, which, according to the language of the subpoena, "accurately reflect evaluation and treatment."

In the face of such chronology, respondent's claim that he was confused because of language problems is difficult to accept, and his additional claim that he was only an employee of the clinic serves only to heighten the doubts. Why a treating physician would have access to the Medicaid invoices, and not the actual medical records, at a time when he claims he no longer is employed by the clinic is an enigma. Respondent admits that he never contacted anyone at the clinic in the three months before the return date of the contempt motion to see if he could obtain the records. Yet, he produced 3,800 documents which, in November, he originally claimed were at three different locations, and would take time to garner.

To accept respondent's arguments requires believing that all the lapses and misunderstandings are purely coincidental and not contrived. As Justice Rothwax noted, when he denied the application for a hearing: "There was nothing in the motion to quash the subpoena that suggested that no such records were in the possession of the doctor. Indeed, implicitly those records were in his possession and that's why it was burdensome for him to comply with the subpoena. If he had no records it would have been simple enough to say I would love to help you out, sorry, I can't comply. I don't have the records. The motion to quash was entirely to the contrary." Thus, it is fairly obvious that respondent is stalling, and his tactics should not be further countenanced.

Under Judiciary Law § 750 (A) (3), a court of record has the power to punish for a criminal contempt a person guilty of "[w]ilful disobedience to its lawful mandate." To prove willfulness the prosecutor relied first upon respondent's admission in November 1985 that he had the subpoenaed documents. He then relied on at least two valid presumptions. Respondent was required, by two different regulations, to keep and maintain medical records for a period of six years. 8 NYCRR 29.2 (a) (3) requires a doctor "to maintain a record for each patient

which accurately reflects the evaluation and treatment of the patient." 18 NYCRR 540.7 (a) (8) requires Medicaid providers to maintain "such records as are necessary to disclose fully the extent of care, services and supplies provided to individuals under the New York State Medicaid program". Where, as here, there exists a statutory requirement that certain records be maintained, it is presumed that they are in fact maintained. *(Matter of Grand Jury Subpoenas [Morgenthau],* 58 AD2d 1.) Moreover, a type of business which ordinarily maintains particular kinds of records, such as medical patient records, is presumed actually to maintain them. *(See, McDowell Assoc. v Pennsylvania R. R.,* 20 FRD 219.) Based upon these admissions and presumptions, the court was entirely justified in finding that respondent's disobedience of the court's lawful mandate was willful.

Once a prima facie case of contempt was presented, the burden shifted to respondent to come forward with a defense —a reasonable explanation for his noncompliance. *(Nilva v United States,* 352 US 385; *United States v Fleischman,* 339 US 349; *Morrison v California,* 291 US 82, 88-89.) This he failed utterly to do, despite his submission of more than 50 pages of material in opposition to the contempt motion and lengthy colloquy with the court.

Furthermore, respondent was not entitled to a hearing since he failed effectively to raise, either in his opposition papers or in colloquy with the court, any disputed issue of fact, including the issue of wilfulness. Nor was the court required to entertain respondent's claim that he did not possess the records since he never stated this as a reason for noncompliance prior to November 21, 1985, the original return date of the subpoena, or January 30, 1986, the day he appeared at the Grand Jury pursuant to the order of Justice Rothwax. A "decent respect", as the court noted in *United States v Bryan* (339 US 323, 332), for the Grand Jury which issued the subpoena, and for the court which issued the order, required that respondent state his "reasons for noncompliance upon the return of the writ." *(Accord, McPhaul v United States,* 364 US 372.)

In *United States v Rylander* (460 US 752, 757), the Supreme Court, citing *Bryan (supra)* and *McPhaul (supra)* with approval, reinstated a contempt adjudication, holding that the issue of lack of possession or control of the subpoenaed documents at the time the subpoena was served "may not be raised for the first time in a contempt proceeding." That principle is dispositive of the spurious and belated excuse now

offered by respondent. Furthermore, in a criminal contempt proceeding such as is involved here, where a party may be sent to jail solely as a punishment for past disobedience, that he may have subsequently divested himself of the ability to comply is irrelevant to guilt and he has no right to litigate that issue.

Accordingly, the order adjudging respondent in contempt and sentencing him to 30 days' imprisonment should be affirmed.