Botsford, J.
The defendants, DRT, PPT and DHT, have moved for a protective order to preclude the plaintiffs’ taking the deposition of Renee Brant, M.D., and further to preclude Dr. Brant from being required to produce treatment and related records which have been subpoenaed by the plaintiffs in connection with the deposition. For the reasons discussed below, the motion is allowed at this time.
Background
The plaintiffs here, a child and her parents, allege in their complaint that the defendant DHT sexually assaulted the child JME on a number of occasions during the period of time between September 1989 and January 1990 when DHT babysat for JME. DHT was fourteen at the time of the alleged incidents. The complaint seeks damages from DHT on account of the alleged assaults, and from his parents on the principal basis of allegedly negligent supervision of their son.
It is undisputed that DHT was treated by psychotherapists before and after the alleged incidents, and the parties have spent much time in this long-pending case disputing the plaintiffs’ ability to discover the psychotherapists’ records and depose the therapists themselves. In fact, there is an earlier chapter in the effort to obtain discovery from Dr. Renee Brant, the event giving rise to the present motion. DHT was treated by Dr. Brant soon after the alleged incidents, and in 1994 the plaintiffs sought to discover her treatment records. A judge of this court allowed the plaintiffs’ motion in part and denied it in part. In particular, she ruled that the plaintiffs might obtain access to those portions, if any, of Dr. Brant’s therapy records which contain “ ‘conclusions based on objective indicia’ of emotional disturbance,”[1] a term which would include “disturbances of sleep or appetite, anergia, impaired concentration of memory, hopelessness, anxiety or panic, dissociative states, hallucinations, labile or flattened affect or somatic symptoms such as headaches.”[2] Ruling on Plaintiffs’ Motion to Compel Discovery, May 10, 1994 (Gershengorn, J.). In response to an inquiry by the parties, Judge Gershengorn later ruled that in the first instance, Dr. Brant should review her records to determine whether any of them contained information concerning “objective indicia" of emotional disturbance. It appears that Dr. Brant did so, and has indicated that her records contain no such information. (Motion for Protective Order, ex. E.)
In March 1995, the plaintiffs began taking the deposition of Dr. James Hreshko, a therapist who *184 (reated DHT for a short period of time in the fall of 1989. The deposition was suspended while a motion was brought on behalf of Dr. Hreshko to determine whether and the extent to which Dr. Hreshko’s records were privileged. Another judge of this court (White, J.) ordered Lhe records to be produced for review in camera. Thereafter, in the fall of 1995, she ruled that no portion of the records was to be released to the plaintiffs. I infer that the deposition of Dr. Hreshko never resumed.
The plaintiffs reinstituted their efforts to obtain discovery from Dr. Brant in approximately June 1996. In response to the defendants’ motion for a protective order currently at issue, the plaintiffs ask first that I review Dr. Brant’s treatment and associated records (e.g., billing records) to determine what portions, if any, are privileged, and then determine whether the plaintiffs still should be entitled to view the records because they have made a showing of “legitimate need.” The plaintiffs argue (hat it is at best inappropriate for the therapist herself (o review the records for the purpose of determining whether they contain material unprotected by any privilege. They further argue that perhaps their primary goal in seeking this review is “to determine if there is any relevant information that could fairly be described as constituting prior parental knowledge or notice of DHT’s unsuitability for child care responsibilities.”[3]
Discussion
The plaintiffs do not dispute that the treatment records of Dr. Brant, a licensed psychiatrist, implicate the patient-psychotherapist privilege in G.L.c. 233, §20B (§ 20B) .[4] Insofar as these records contain “communications”[5] between Dr. Brant and DHT himself, again, there is no dispute by the plaintiffs that the privilege applies.[6] In my view, the plaintiffs’ request to have me review Dr. Brant’s records raises two separate questions: (1) to the extent Dr. Brant’s records contain information that does not qualify as communications, is the information relevant to the issues in this case; and (2) are communications between Dr. Brant and lhe parents of DHT (i.e., DRT and PPT) protected by lhe §20B privilege. I address each separately.
1.Information other than communications.
As Judge Gershengorn ruled, psychiatric records may well contain information that does not fit within the patient-psychotherapist privilege in §20B because it does not constitute “communications.” I agree with Lhe plaintiffs that insofar as Dr. Brant’s records contain or may contain non-privileged material which may be relevant to the case, it might be appropriate for a judge to review the records rather than leaving the determination wholly to the doctor. I need not resolve lhe question here, however, because in the circumstances I conclude that any non-privileged material in Lhe records would not be relevant.
Dr. Brant did not see DHT until after the alleged assaults had stopped. Medication records and Dr. Brant’s observations about issues such as somatic symptoms, affect, impaired concentration or memory[7] at the time of treatment, would not speak directly to DHT’s condition at an earlier time.[8] Moreover, these types of observations or similar information would not appear relevant to the issue of whether DHT’s parents knew or should have known some months earlier that he would not be a suitable babysitter.[9]
2.Communications to and from DHT’s Parents
The plaintiffs assert that insofar as Dr. Brant’s records contain information about communications to or from DHT’s parents, that information cannot be privileged because Dr. Brant’s patient was DHT only. I cannot agree.
At the time DHT saw Dr. Brant, he was fourteen years old. It is clear from the materials submitted in connection with the motion for a protective order, and earlier motions concerning discovery, thatDHTs parents, PPT and DRT, arranged for him to see Dr. Brant, and I infer from Dr. Brant’s letter of September 13, 1994 (exhibit E to motion for protective order) that in some way they were involved in her treatment or diagnosis of DHT.
Section 20B embraces a flexible view of who qualifies as a “patient” and what a “communication” entails for purposes of the privilege.[10] Where a minor child is involved, it seems inevitable that the psychotherapist is going to need to obtain information from the parentis) as part of her diagnosis and treatment. And while perhaps not inevitable, it is at least reasonable to assume that the therapist in turn will communicate information about the child’s diagnosis, treatment, or both, to the parents during the course of the treatment. In my view, the definitions of “patient” and “communication” in §20B are sufficiently generous to include within the protection of the privilege the communications between the parents of a minor child and the child’s psychotherapist which relate to the diagnosis and treatment of the child. See Rule 503 of the Proposed Rules of Massachusetts Evidence (1980).[11] See also Commonwealth v. Clemons, 12 Mass.App.Ct. 580, 584 n. 2 (1981). Cf. Robinson v. Commonwealth, 399 Mass. 131, 133-135 (1987) (mother of critically ill child in hospital was entitled to assert protection of §20B privilege for report of her conversation with hospital staff psychiatrist, initiated by psychiatrist, concerning mother’s feelings about child’s critical health situation). Accordingly, I conclude that any portion of Dr. Brant’s records relating to communications between her arid DHT’s parents are privileged, and not discoverable by the plaintiffs.
3.Conclusion
The discussion above concerns the plaintiffs’ access to Dr. Brant’s treatment records. In light of my determination that the records are not discoverable, any deposition of Dr. Brant would appear fruitless, since the facts to which she might testify have not been shown to be either relevant or non-privileged. However, if the plaintiffs believe that there remain substantive areas of inquiry they would pursue with Dr. Brant that do not involve either privileged or irrelevant ma *185 terial, they make seek reconsideration of this order insofar as the deposition is concerned.
ORDER
For the foregoing reasons, the defendants’ motion for a protective order is allowed, without prejudice.

Adoption of Seth, 29 Mass.App.Ct. 343, 353 (1990) (citation omitted).

See Commonwealth v. Kobrin, 395 Mass. 289, 295 n. 18 (1985).

Further Memorandum in Support of Plaintiffs’ Opposition to Defendant DHT’s Motion for a Protective Order, p. 2.

The privilege created by §20B is the following:
Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional state.

The term “communications” is defined in §20B as “includ[ing] conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient’s awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing.”

Although the plaintiffs do not address the point, it is clear that with respect to these communications, as Judge Gershengorn observed, none of the exceptions to the privilege in G.L.c. 233, §20B(a) through (f) is applicable in this case.

I focus on this type of information because information concerning such “objective indicia” appears to be the only portion of Dr. Brant’s records that would be unprotected by privilege. The plaintiffs have sought from Dr. Brant records of diagnosis: prognosis: psychological examinations and tests; all recommendations, reports, evaluations, consultations, consultation reports, and records of referral; bills; and records of appointment dates. Records of appointment dates and billing appear wholly irrelevant to any substantive issue in this case; no one denies that DHTwas treated by Dr. Brant, and there does not appear to be any unwillingness of the defendants to provide the dates of treatment. With respect to records of treatment, diagnosis and prognosis, while Commonwealth v. Kobrin, supra, 395 Mass. at 294, 295 and n. 18, does conclude that the defendant psychiatrist was required to turn over to a grand jury portions of his records which documented, inter alia, patient diagnoses, treatment plans and recommendations, Kobrin was a very different case. The court was balancing there the policy of protecting the Medicaid program from fraud — a policy which required the government to have the ability to conduct meaningful fraud investigations — and the policy or protecting the expectations of confidentiality which patients have in seeking psychotherapeutic treatment. See id. at 290, 291-295. In ruling that portions of the doctor’s records could be made available to the Commonwealth, the court was not pronouncing that all such portions were outside of the §20B privilege as a general matter. Rather, its discussion suggests an effort in that particular case to give the Commonwealth sufficient information to enable its fraud investigation to proceed while protecting the core of the privilege. In this case, any portions of Dr. Brant’s records that contain a diagnosis, prognosis or treatment recommendations would appear to be privileged because inevitably they would be based, in whole or in integral part, on communications between Dr. Brant and DHT. Any records or reports of other therapists, school officials, etc. which may be included in Dr. Brant’s records would not be discoverable unless they are otherwise non-privileged; if they do fit within this latter category, presumably the plaintiffs already have received them, or at least would be permitted to discover them directly from the source. As for psychological tests and the like, there is no indication that Dr. Brant herself conducted any such tests; if she did, the defendants should so notify the plaintiffs to enable the parties to address directly the issue of whether any results of those test(s) should be disclosed to the plaintiffs.

It is not clear to me why the plaintiffs seek this “observation” information. If one of their purposes is to use any such observations as a foundation for an expert opinion about DHT’s probable or possible behavior.at an earlier time, the link would seem too attenuated or too speculative to permit its introduction. If the plaintiffs seek the information as a way to demonstrate their need for the privileged portions of Dr. Brant’s records, the effort must fail. As indicated above, none of the statutoiy exceptions to the §20B privilege applies and the plaintiffs cannot and do not assert a constitutional right that would override the statutory privilege. (See note 9 below.)

This is not a criminal case, and the privileged records at issue here are not those of the person complaining of sexual assault, but rather those of the alleged assailant. Nonetheless, the recent discussion of the importance of protecting the privacy of counseling records in Commonwealth v. Fuller, 423 Mass. 216, 223-227 (1996) has some bearing on this case. In Fuller, a criminal case requiring that the defendant’s constitutionally protected right to exculpatory information be balanced against a complainant’s privacy concerns protected by statute, the court observed that “disclosure, even in the limited form of an in camera inspection, should not become the general exception to the rule of confidentiality.” Id. at 225. The court went on to prescribe'a more rigorous showing than just relevance which a criminal defendant must make in order to trigger an in camera inspection of sexual assault counseling records. Id. at 226-227.
In this civil action, the plaintiffs do not have the same constitutional basis to claim access to DHT’s psychiatric records as a criminal defendant. See Herridge v. Board of Registration in Medicine, 420 Mass. 154, 157 (1995). To require a judge to conduct an in camera review of those records for the purpose of determining which portion(s) are not privileged necessarily involves at least a limited invasion of the confidentiality privilege in §20B. In the circumstances, it would appear the plaintiffs need to demonstrate a specific basis for concluding that the non-privileged portions, if any, of Dr. Brant’s records have a specific relevance to their claims. They have not made the showing.

Section 20B defines a patient as “a person who, during the course of diagnosis or treatment, communicates with a psychotherapist.” As indicated above, the term “communication” includes “conversations, correspondence, actions and occurrences relating to diagnosis or treatment. . .”

Rule 503(a) provides:
A communication is “confidential” if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist, including members of the patient’s family.
Rule 503(b) provides:
A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his mental or emotional condition . . . among himself, his psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient’s family.