OPINION OF THE COURT
Chief Judge Wachtler.
The physician-patient privilege originated in this State. It did not exist at common law and the first statute to recognize the privilege was adopted by the New York Legislature in *237 1828. This case tests that privilege against a Grand Jury subpoena.
Petitioners, two psychiatrists, have moved to quash subpoenas requiring them to produce records before a Grand Jury investigating complaints of Medicaid fraud. Their primary contentions are that compliance with the subpoenas will violate their Fifth Amendment rights, as well as the physician-patient privilege granted to their patients by statute (CPLR 4504). The trial court denied the motion but the Appellate Division modified, concluding that the physician-patient privilege applied, except as to matters necessary to the investigation, and ordered an in camera inspection to determine which portions of the records should be disclosed. Both sides have appealed by leave of the Appellate Division.
The Deputy Attorney-General in charge of the investigation argues that the physician-patient privilege does not apply to Medicaid fraud investigations and that the records should be produced without a showing of need. The petitioners, on their cross appeal, argue that the act of producing the records would constitute self-incrimination and therefore, the motion to quash should have been granted. In the alternative, they argue the modification was proper.
The petitioners are practicing psychiatrists with offices in the City of New York. Dr. X is a sole practitioner; Dr. Y has been practicing as a professional corporation since 1980. He is the sole shareholder, officer and employee of the corporation. Both doctors are Medicaid providers, who from 1981 to 1983 received considerable sums for services performed for Medicaid patients. They are also the subject of a Grand Jury investigation into allegations of Medicaid fraud, including a claim that each of them received Medicaid payments for services rendered to patients in New York while the doctors were actually out of the country.
On December 14, 1984 each of the petitioners was served with a subpoena, issued by the Deputy Attorney-General for Medicaid Fraud Control, requiring appearance before the Grand Jury and production of certain records covering a period from January 1, 1981 to December 31, 1983. Dr. X, the sole practitioner, was directed to produce "[s]uch records as [are] required by law to be kept, which reflect the evaluation and treatment * * * [and] which disclose fully the extent of care, services and supplies provided under the New York State Medicaid Program” to approximately 167 patients listed *238 in an attached schedule. The subpoena served on Dr. Y ordered "[a]ny Officer, Director or Managing Agent” of the professional corporation to produce various corporate records, including "patient charts” for over 150 "Medicaid recipients listed in Schedule 'A’ annexed hereto.” There is no indication that any of the patients whose records were sought had executed waivers.
Each of the petitioners moved to quash the subpoenas principally on the grounds that requiring them to produce the records would violate their rights under the Fifth Amendment of the United States Constitution against self-incrimination and their patients’ statutory physician-patient privilege.
The trial court denied the motions. The court held that the Fifth Amendment privilege could not be asserted with respect to corporate records or records required to be kept by law. Relying on our decision in Matter of Camperlengo v Blum (56 NY2d 251), the court also concluded that the physician-patient privilege was abrogated when medical records are sought in an investigation of fraudulent Medicaid practices.
The Appellate Division modified. That court agreed that the Fifth Amendment provided no basis for quashing the subpoenas. However, also relying on our decision in Matter of Camperlengo, the court concluded that in a Medicaid investigation, the physician-patient privilege was abrogated only to the extent necessary to insure that Medicaid funds are being properly applied. The court concluded that this imposed "a requirement of particularized need before the production of medical records otherwise protected by the privilege may be required” (113 AD2d 49, 54). The court remitted to have the trial court conduct an in camera inspection to determine which portions of the records should be made available to the Grand Jury.
On this appeal the Deputy Attorney-General urges that the physician-patient privilege is completely inapplicable to Medicaid investigations and that in such cases those conducting the investigation should have unrestricted access to medical records of Medicaid patients, without having to make any showing of need for the particular record. He claims that this is required by the Federal law relating to Medicaid, by our own prior decisions and by the public policy against delaying Grand Jury investigations.*
*239 The statutory privilege protects confidential communications between patient and physician in order to protect the patient from "humiliation, embarrassment or disgrace” (Steinberg v New York Life Ins. Co., 263 NY 45, 48-49). The theory is that a person in need of medical attention should be encouraged to make full and candid disclosure of all matters necessary to treatment by being assured that what is disclosed to the doctor will not be revealed to others without the patient’s consent (3 Commission on Revision of Statutes of NY, at 737 [1836]). The privilege is personal to the patient but may be asserted by the physician in the absence of a waiver by the patient (Prink v Rockefeller Center, 48 NY2d 309, 314-315).
A number of exceptions have been recognized, but there is no exception for Grand Jury proceedings or criminal investigations generally (Matter of Grand Jury Investigation, 59 NY2d 130, 135-136). A physician, medical facility and others may assert the privilege before a Grand Jury, unless the patient was a victim of the one asserting the privilege (Matter of Grand Jury Investigation, supra, at p 135). However in Matter of Camperlengo v Blum (supra) we did recognize an exception for Medicaid investigations. In that case, involving a subpoena issued in connection with an administrative investigation by the Department of Social Services, we stated (at pp 255-256): "Although there is no express statutory exception to the privilege for Medicaid-related records, the Federal and State record-keeping and reporting requirements evidence a clear intention to abrogate the physician-patient privilege to the extent necessary to satisfy the important public interest in seeing that Medicaid funds are properly applied.”
The Deputy Attorney-General contends that this decision and the subsequent holding in Matter of Doe v Kuriansky (91 AD2d 1068, affd 59 NY2d 836) applying the exception to Grand Jury proceedings initiated by the Medicaid Fraud Unit establish a right of unrestricted access to medical records of Medicaid recipients in the case now before us. In Matter of Camperlengo (supra), the petitioner broadly contended that the *240 privilege could be asserted to deny the investigators access to all medical records, and in Matter of Doe (supra), the petitioner made a contention, nearly as broad, that all patients’ names should be redacted from the medical records, and that all medical information should be deleted from certain nonmedical records. Although we rejected those contentions, we did not consider whether a more narrow assertion of the privilege, addressed to particularly sensitive matter apparently unnecessary to the investigation, would prove unavailing. Indeed in Matter of Camperlengo we noted that we had "no occasion to delineate the precise boundaries of the exception” because the petitioner there had abandoned any claim that the subpoena was overly broad (Matter of Camperlengo v Blum, supra, at p 256, n).
The Deputy Attorney-General contends that any rule denying Medicaid investigators unfettered access to medical records of Medicaid recipients is inconsistent with Federal law and would jeopardize this State’s right to receive Medicaid funds. Concededly a State participating in the Medicaid program must comply with the Federal statutes which require Medicaid providers to maintain and furnish to appropriate authorities "such records as are necessary fully to disclose the extent of the services provided.” (42 USC § 1396a [a] [27].) But the exception to the physician-patient privilege resulting from this requirement is "intended to be no broader than necessary for effective oversight of the Medicaid program” (Matter of Camperlengo v Blum, supra, at p 256). Thus Medicaid investigators have an unqualified right to review all records needed for the investigation, even though they may contain privileged, and extremely sensitive, material. It is only privileged matters not necessary to the Medicaid investigation which need not be disclosed (see, Commonwealth v Kobrin, 395 Mass 284, 479 NE2d 674). This minimal and occasional qualification of the investigators’ powers is consonant with Federal objectives and would not jeopardize the State’s Medicaid entitlements.
The Deputy Attorney-General’s objection to this rule is essentially procedural. He apparently claims no right to obtain records which are clearly unnecessary to the investigation. However, he contends that Medicaid investigations will be unduly delayed if investigators are generally required to appear in court and prove that subpoenaed records containing privileged material are necessary to the investigation. This is a legitimate concern, but we do not impose any such broad, *241 generalized requirement on those conducting Medicaid investigations.
In most instances the information sought by Medicaid investigators is either not privileged, or of such a nature that its relevance to a Medicaid investigation is readily apparent. For instance, the identity of patients as well as the dates of treatment is not covered by the physician-patient privilege (Matter of Grand Jury Investigation, supra, at pp 134-135; Lorde v Guardian Life Ins. Co., 252 App Div 646). The diagnosis and the nature and extent of treatment are privileged (Matter of Grand Jury Investigation, supra, at p 135), but are obviously necessary for those investigating the validity of a claim, which has been submitted for payment, or paid out of Medicaid funds. Records of this nature should be routinely disclosed to those charged with making such investigations. Merely asserting the privilege is not enough; something more must be shown before court intervention would be warranted. It is only in the rare instance where the record sought contains highly sensitive matter having no apparent relevance to the Medicaid investigation, that a claim of privilege need be considered. In those instances the burden is on the person asserting the privilege to identify the particular record. If the court agrees that an explanation is warranted, then the burden would be on the investigator to show why disclosure of that record is necessary to the investigation.
The investigator’s response need not be burdensome or subject to dilatory abuses. He should not be obligated to show a "particularized need”, as would be required for disclosure of Grand Jury minutes (see, Matter of District Attorney, 58 NY2d 436, 444). Disclosure of medical records to Medicaid investigators is not public disclosure. Under both Federal and State law information obtained in that manner must remain confidential within the confines of the Medicaid investigation (Matter of Camperlengo v Blum, supra, at p 256). Thus a showing that the record sought, although unusually sensitive and otherwise privileged, reasonably and minimally comes within the scope of the investigation, should suffice to authorize limited disclosure to Medicaid investigators.
In the case now before us the subpoenas are so broadly worded as to require the psychiatrists to disclose all records relating to treatment, including consultation notes of all psychotherapeutic sessions with the patient. This, we have noted, is particularly sensitive matter (Cynthia B. v New *242 Rochelle Hosp. Med. Center, 60 NY2d 452, 459). The nature of the record, however, is not alone sufficient to satisfy the custodian’s burden of demonstrating that a particular record or portion of a record contains highly sensitive material apparently bearing no relevance to the investigation. In this case, the custodians made no such showing, which generally would require the court to deny them any relief with respect to the subpoena. Remittal is appropriate here solely because the petitioners had no opportunity to meet the standard we now establish.
With respect to the petitioners’ cross appeal, the courts below properly held that compliance with the subpoenas would not infringe the petitioners’ Fifth Amendment rights. As noted, the subpoena served on Dr. X sought only records required to be kept by law, and the subpoena served on Dr. Y sought only corporate records, most of which are also required to be kept by law. It is settled that a corporation has no Fifth Amendment privilege and that a custodian of corporate records may not refuse to produce them even though they may incriminate him personally (Bellis v United States, 417 US 85, 88; Matter of Bleakley v Schlesinger, 294 NY 312). It is also settled that the Fifth Amendment privilege may not be asserted with respect to records required to be kept by law. (Shapiro v United States, 335 US 1; People v Doe, 59 NY2d 655).
Petitioners concede that the Fifth Amendment privilege does not apply to the content of these records. They contend, however, that the act of producing the records may be incriminatory because the petitioners would be admitting that the records exist, that they are in the petitioners’ possession and that they are accurate. They urge that recent Supreme Court decisions (United States v Doe, 465 US 605; Fisher v United States, 425 US 391) undermine the settled law and would now permit the custodians of corporate records and required records to refuse to produce them when the act of production would itself be incriminatory. These cases, however, did not expressly overrule the prior cases, and in the most recent case the Supreme Court noted that the rule announced "concerns only business documents and records not required by law to be kept or disclosed to a public agency.” (United States v Doe, supra, at p 607, n 3.)
Accordingly, the order of the Appellate Division should be affirmed.

[1] Contrary to the dissent, the question of the subpoenas’ overbreadth *239 may be considered on the merits in this court. Unlike Matter of Camperlengo v Blum (56 NY2d 251) where the petitioners did not argue before our court that the subpoena is overbroad, the petitioners here have made such an argument on this appeal. The fact that the petitioners did not raise this point in the trial court does not preclude us from considering it here because the rights of third parties not before the court would be affected by the disclosure (Matter of Johnson Newspaper Corp. v Stainkamp, 61 NY2d 958).