*974 OPINION OF THE COURT
Randall T. Eng, J.
In a matter of first impression arising from a local Grand Jury investigation into purported Medicare fraud by a Queens County orthopedic surgeon, this court today holds that State and Federal public policy and the statutory framework underlying the Federally funded Medicare program require that an exception to the physician-patient privilege under CPLR 4504 (a) be created.
Pursuant to a 111-count indictment this defendant, an orthopedic surgeon and participating provider in the Federal Medicare program, has been charged with a series of crimes arising from a calculated scheme to defraud the United States Government and Group Health Insurance (GHI), the insurance carrier paid by the United States Government to administer the Medicare program in Queens County. It is alleged that the subject acts were perpetuated by Dr. Harshad Bhatt during the period between January 1, 1990 and July 8, 1992. More specifically, the indictment has accused the defendant of having committed the following related crimes: insurance fraud, second degree (count 1); grand larceny, third degree (count 2); scheme to defraud, first degree (count 3); insurance fraud, third degree (counts 4-21, 48 and 102); grand larceny, fourth degree (counts 22-34 and 103); attempted grand larceny, third degree (counts 35-39 and 104); insurance fraud, fourth degree (counts 40-47 and 49-50); falsifying business records, first degree (counts 51-86, 97 and 99-101); attempted grand larceny, fourth degree (counts 87-88); petit larceny (counts 89-96 and 98); insurance fraud, fifth degree (counts 105-106 and 109-111); and attempted petit larceny (counts 107-108).
The theory of the People’s prosecution is grounded upon the alleged filing by this defendant of fraudulent and false Medicare claims with GHI, on at least 30 occasions. It is further alleged that the defendant receiving unjustified payments from GHI in a sum in excess of $27,000, said payments in the form of checks drawn on an account instituted by the United States Government in connection with the Federally funded Medicare program. According to the proof adduced during the extended Grand Jury presentation, there was a dual nature to the false claims submitted by the defendant. On certain occasions, it is alleged that the defendant doctor filed Medicare claims for orthopedic surgical procedures and/or traction that was never performed on the named patient by this *975 defendant. At other times, it is alleged that the defendant doctor engaged in "double billing,” that is, he supposedly filed more than one claim for the same procedure performed on the same patient.
ILLEGALLY OBTAINED EVIDENCE — THE PHYSICIAN-PATIENT PRIVILEGE
In a final assault upon the integrity of the indictment, the defendant forcefully argues that the indictment is predicated upon illegally obtained evidence, the effects of which have so permeated the indictment process as to mandate dismissal of each count thereof. The evidence referred to by the defendant consists of "patient medical records,” "charts,” "operating records,” "hospital records” and "nursing home records” (collectively referred to as the medical records). Correctly surmising that the "foundation” for the theory of the prosecution lay within a comparison of the subject medical records and the Medicare claims purportedly submitted by defendant to GHI, the defendant has advanced the unwarranted contention that in obtaining these medical records, without notice to or upon consent of the patients or their legal representatives, the prosecution has allegedly done violence to the fundamental principles of the physician-patient privilege granted to these patients by CPLR 4504 (a).
Departing from the traditional common-law view against the physician-patient privilege (see, Duchess of Kingston’s Case, 20 How St Tr 355, 573 [1776]), "New York State became the first jurisdiction to * * * adopt * * * the physician-patient privilege by statute in 1828 (2 Rev Stat of NY, part III, ch 7, tit 3, § 73 [1828])” (Dillenbeck v Hess, 73 NY2d 278, 284). In pertinent part, CPLR 4504 (a) now provides: "(a) Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
The statute’s enactment "was based on the belief that fear of embarrassment or disgrace flowing from disclosure of communications made to a physician would deter people from seeking medical help and securing adequate diagnosis and treatment” (Williams v Roosevelt Hosp., 66 NY2d 391, 395; Matter of Camperlengo v Blum, 56 NY2d 251, 254-255; Edington v Mutual Life Ins. Co., 67 NY 185, 194). Despite severe *976 criticism "because of serious doubts that its truth-inhibiting effect can be justified by any real promotion of the public health” (Williams v Roosevelt Hosp., supra, at 395-396; see, e.g., Fisch, New York Evidence § 557 [2d ed]; 8 Wigmore, Evidence § 2380a [McNaughton rev 1961]), the privilege remains viable to this day.
Nevertheless, the Legislature has seen fit to create several statutory exceptions to the physician-patient privilege, based upon the overriding public need to receive otherwise privileged information under certain designated circumstances, e.g., (1) CPLR 4504 (b) — requirement for a dentist to supply identifying information; (2) Penal Law § 265.25 — obligation of a physician to report gunshot and knife wounds which are likely to result in death; (3) Family Court Act § 1046 (a) (vii)— no privilege in child abuse or neglect proceedings; (4) Social Services Law §§ 413 and 415 — obligation to report suspected cases of child abuse or maltreatment; (5) Public Health Law § 2101 (1) — reporting requirement with respect to communicable disease; and (6) Public Health Law §§ 3372 and 3373— reporting requirement with respect to patient who is an addict or habitual user of narcotic drugs (see, Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4504:4, at 634-635).
However, no exception to the statutory physician-patient privilege exists "for Grand Jury proceedings or criminal investigations generally” (Matter of Grand Jury Subpoena Duces Tecum v Kuriansky, 69 NY2d 232, 239; Matter of Grand Jury Investigation, 59 NY2d 130, 135-136). As the People correctly concede, the physician-patient privilege may be asserted before a Grand Jury by a physician or medical facility, unless the patient was a victim of the one asserting the privilege (see, Matter of Grand Jury Subpoena Duces Tecum v Kuriansky, supra, at 239; Matter of Grand Jury Investigation, supra, at 135; see also, Prink v Rockefeller Ctr., 48 NY2d 309, 314-315— privilege is personal to the patient but may be asserted by the physician in the absence of a waiver by the patient). This "pragmatic limitation upon this rule” is predicated upon the belief that "a person or entity subject to proceedings for having committed crimes against an individual should not be permitted to assert the victim’s physician-patient privilege as a bar to production of relevant medical records or testimony * * * the purpose of the privilege is to protect the patient, not to shield the criminal” (Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352-353).
*977 In the case at bar, the defendant maintains his right to assert the physician-patient privilege on behalf of the subject patients, since the patients were not the "victims” of the alleged fraudulent billing practices. According to Black’s Law Dictionary (1405 [5th ed 1979]), a victim is "[t]he person who is the object of a crime or tort, as the victim of a robbery is the person robbed.” The object(s) of the alleged crimes under this indictment, that is, the victim(s) of the insurance fraud, grand larceny and scheme to defraud are, in fact, found to be GHI, the insurance carrier, and the United States Government, the funding source of the Medicare program. This finding is made upon a literal reading of the express language contained within the enumerated counts of the indictment and a review of the evidence adduced before the Grand Jury.
Based upon the precedential weight of the existing case law and the relevant statutory framework, it is evident that unless an appropriate "exception” be demonstrated (or created) to the physician-patient privilege under CPLR 4504 (a), the defendant doctor must be permitted to challenge as legally incompetent the "medical records” evidence that was presented in the Grand Jury. This evidence was obtained, albeit by Grand Jury subpoena, without notice to or upon consent of the patients or their legal representatives.
The People assert that the judicially created "Medicaid investigation” exception (see, Matter of Camperlengo v Blum, supra, at 255-256; Matter of Grand Jury Subpoena Duces Tecum v Kuriansky, supra, at 239) should be enlarged to encompass those situations involving a Grand Jury investigation into Medicare fraud. This court agrees with that position.
In Matter of Camperlengo v Blum (supra) the State Department of Social Services launched an investigation into the billing practices of the petitioner psychiatrist. Finding the petitioner’s practice of "consecutive billing dates for certain Medicaid patients” (at 254) to be unusual, the Department of Social Services issued a subpoena duces tecum requiring petitioner to produce his records concerning 35 Medicaid patients. On appeal, the petitioner contended that the material sought by the subpoena was protected by the physician-patient privilege set forth in CPLR 4504 (a), and that the trial court should have granted his motion to quash the subpoena.
Recognizing that the physician-patient privilege "serves an important * * * function,” the Court of Appeals noted that "in certain instances the Legislature has abrogated this privi *978 lege to effectuate some other public policy” (Matter of Camperlengo v Blum, supra, at 255). The Court then set forth the pivotal issue: "The question here is whether and to what extent the State and Federal regulatory provisions of the Medicaid program have also created an exception to the privilege?”
Finding that for the publicly funded Medicaid program to be carried out effectively, "the public must be assured that the funds which have been set aside for this worthy purpose will not be fraudulently diverted into the hands of an untrustworthy provider of services” (Schaubman v Blum, 49 NY2d 375, 379), the Court of Appeals concluded that "the Medicaid program requires that certain information be made available to those charged with administering the program” (Matter of Camperlengo v Blum, supra, at 255). The Court then held as follows: "Although there is no express statutory exception to the privilege for Medicaid-related records, the Federal and State record-keeping and reporting requirements evidence a clear intention to abrograte the physician-patient privilege to the extent necessary to satisfy the important public interest in seeing that Medicaid funds are properly applied” (supra, at 255-256).
In Grand Jury v Kuriansky (supra) two psychiatrists moved to quash subpoenas requiring them to produce records before a Grand Jury investigating complaints of Medicaid fraud. One of the contentions raised by the petitioners during the proceedings was that compliance with the subpoenas would violate the physician-patient privilege granted to their patients by statute (CPLR 4504). Citing its decision in Matter of Camperlengo v Blum (supra) the Court of Appeals reaffirmed the applicability and continued existence of the so-called "Medicaid investigation” exception, stating: "Thus Medicaid investigators have an unqualified right to review all records needed for the investigation, even though they may contain privileged, and extremely sensitive, material. It is only privileged matters not necessary to the Medicaid investigation which need not be disclosed” (Matter of Grand Jury Subpoena Duces Tecum v Kuriansky, supra, at 240).
The Court of Appeals also took the opportunity to comment that "[i]n most instances the information sought by Medicaid investigators is either not privileged, or of such nature that its relevance to a Medicaid investigation is readily apparent. For instance, the identity of patients as well as the dates of treatment is not covered by the physician-patient privilege” *979 (supra, at 241, citing Matter of Grand Jury Investigation, 59 NY2d 130, 134-135, supra; Lorde v Guardian Life Ins. Co., 252 App Div 646).
As part of its rationale for holding that the physician-patient privilege was abrogated to the extent necessary to investigate Medicaid fraud, the Court of Appeals, in Camperlengo and Kuriansky (supra), found that for the Medicaid program to be carried out effectively it required that certain information be made available to those responsible for the administration of the program. As further evidence of a clear intent to so abrogate the privilege (see, Henry v Lewis, 102 AD2d 430, 436), the Court of Appeals cited Federal law (42 USC § 1396a [a] [27]) and New York State regulatory provisions (18 NYCRR 540.7 [a] [8]) requiring Medicaid providers to both maintain and furnish to appropriate authorities such records as are necessary fully to disclose the extent of the services provided and to keep such information available to the appropriate agencies for a minimum of six years after payment (see, Matter of Camperlengo v Blum, supra, at 255; Matter of Grand Jury Subpoena Duces Tecum v Kuriansky, supra, at 240).
Therefore, as a prerequisite to any judicial expansion of the Medicaid investigation exception to encompass Grand Jury investigations into potential Medicare fraud, it must be demonstrated that the Medicare program contains similar statutory record keeping and reporting requirements.
Medicare, enacted in 1965, is a Federally funded health insurance program contained in title XVIII of the Social Security Act (42 USC § 1395 et seq.). In general, it is designed to provide health insurance benefits to Social Security recipients over 65 years of age and to those permanently disabled as defined under the Social Security Act. Unlike Medicaid, Medicare is entirely a Federal program. Medicaid, also enacted in 1965, is jointly financed by the Federal and State governments and is administered by the States. Found under title XIX of the Social Security Act (42 USC § 1396 et seq.), Medicaid authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled or members of families with dependant children or qualified pregnant women or children (see, 42 CFR 430.0; McCormick, Medicare and Medicaid Claims and Procedures, vol 1, at viii [2d ed 1986]).
As administered by the Health Care Financing Administration within the Department of Health and Human Services, *980 Medicare, like Medicaid, statutorily provides for record keeping and reporting of information concerning the beneficiaries, or patients, of the program. In addition, the standard medical health insurance claim form, in box 12 — entitled release of information from patient, contains the following waiver for the release of confidential medical information: "I hereby authorize any physician * * * hospital * * * to furnish any and all records pertaining to medical history, services rendered, or treatment given to me * * * for purposes of review, investigation or evaluation of this claim.”
The inclusion herein of the quoted language from the Medicare claim form is not intended to imply that this court construes the pro forma waiver as sufficient, standing alone, to countervail the unequivocal meaning of CPLR 4504 (a), which specifically excludes standard insurance waivers as constituting an enforceable waiver of the physician-patient privilege; rather, its inclusion is intended to help demonstrate the Medicare program’s need for an unfettered ability to examine the medical records of its beneficiaries during the course of an investigation or other oversight of the program.
The power and authority to make rules and regulations affecting the implementation of the Medicare program, including the requirements of record keeping and reporting of information, may be found within the Social Security Act and rests with the Secretary of Health and Human Services. 42 USC § 405 (a) provides: "The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this title * * * which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder”.
The express intent of Congress to establish a free-flowing information highway for the purpose of determining the legitimacy of Medicare claims, by the Health Care Financing Administration, is evidenced by the provider and supplier agreements, as set forth in 42 CFR part 489. Subpart (E) of part 489 — entitled Termination of Agreement and Reinstatement After Terminations, provides, in pertinent part:
"(a) Basis for termination of agreement with any provider. HCFA may terminate the agreement with any provider if *981 HCFA finds that any of the following failings is attributable to that provider:
"(1) It is not complying with the provisions of title XVIII and the applicable regulations of this chapter or with the provisions of the agreement. * * *
"(4) It fails to furnish information that HCFA finds necessary for a determination as to whether payments are or were due under Medicare and the amounts due.” (42 CFR 489.53 [emphasis supplied by court].)
Thus, it can be seen that the statutory record keeping and reporting requirements present in Matter of Camperlengo v Blum (supra) and Grand Jury v Kuriansky (supra) and strongly relied upon by the Court of Appeals in the formulation of its decision to abrogate the physician-patient privilege with respect to Medicaid investigations, are likewise present and applicable to the Medicare fraud investigation herein.
This court is of the firm belief that the public policy goal announced in Schaubman v Blum (supra) and pointedly affirmed in Matter of Camperlengo v Blum (supra, at 255) and Grand Jury v Kuriansky (supra), that is, an assurance that public funds from Medicaid will not be fraudulently diverted into the hands of an untrustworthy provider of services, is equally applicable to the inherent design and orderly functioning of the Federally funded Medicare program. No rational distinction may be drawn, insofar as record keeping and reporting requirements are concerned, between these two publicly funded health insurance programs. It should be a matter of sound public policy that those officials, who are charged with maintaining vigilance over public funds dedicated to the Medicare program, have available to them a legitimate and unqualified means of access to medical reports required for specific investigations, in light of the potential for massive insurance fraud.
Accordingly, it is the holding of this court that in order to effectuate the objectives and regulatory provisions of the Medicare program, an exception to the physician-patient privilege under CPLR 4504 (a) must be created to permit appropriate oversight of the Medicare program. Those charged with such investigations should have an unqualified right to review all records needed for their investigation, notwithstanding that they may contain privileged, and extremely sensitive, material, so long as the disclosure and use of such material is limited to purposes directly related to the Medicare investigation.
*982 In seeking to have the indictment dismissed, the defendant has questioned the legality and competence of the evidence presented to the Grand Jury on the grounds that in obtaining the evidence the prosecution violated the fundamental principles of the physician-patient privilege. Unlike the factual situations presented in Matter of Camperlengo v Blum (supra), Grand Jury v Kuriansky (supra), and Henry v Lewis (supra) wherein the petitioners sought to squash the respective subpoenas calling for the production of their medical office records, the defendant herein has moved to dismiss the indictment; in effect, the product of the medical records subpoenaed by this Grand Jury. Consequently, the court is not now constrained to determine whether it would have been appropriate to limit or fix conditions with respect to the subpoenas prior to their issuance. In this instance, the court’s inquiry must naturally be focused upon those materials disclosed to the Grand Jury and their relevance to the underlying Medicare fraud investigation.
Having carefully reviewed the Grand Jury minutes, the court finds that the prosecutor’s use of the subject medical records in the Grand Jury was strictly confined to the limited disclosure necessary for establishing the defendant’s alleged commission of those acts constituting, inter alia, a scheme to defraud GHI and the United States Government. The subject matter of the material disclosed was limited to the names of the patients, the dates of their admissions (or nonadmissions) and, in some instances, the diagnosis and the nature and extent of treatment. While ordinarily facts surrounding the diagnosis and course of treatment of a patient are privileged, their disclosure in the Grand Jury was justified pursuant to the Medicare exception to the physician-patient privilege.
Accordingly, that branch of the defendant’s omnibus motion which seeks dismissal of the indictment is denied in its entirety.
[Portions of opinion omitted for purposes of publication.]