[830 NE2d 1118, 797 NYS2d 790]

In the Matter of Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003. "Doe Law Firm" et al., Appellants; Eliot Spitzer, as Attorney General of the State of New York, Respondent.

Argued March 29, 2005; decided May 3, 2005

**POINTS OF COUNSEL**

*Kenneth J. Weinstein,* Garden City, and *Judah Serfaty* for appellants. I. The subpoena violates the individual partners' state constitutional rights against compelled self-incrimination. (*Bellis v United States,* 417 US 85; *United States v Doe,* 465 US 605;

*Fisher v United States,* 425 US 391; *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F3d 87; *People ex rel. Taylor v Forbes,* 143 NY 219; *People v P.J. Video,* 68 NY2d 296; *Boyd v United States,* 116 US 616; *People v Scott,* 79 NY2d 474; *People v Dunn,* 77 NY2d 19; *People v Torres,* 74 NY2d 224.) II. Even under *Bellis v United States* (417 US 85 [1974]) the partnership here is not a "separate entity." III. The subpoena violates the individual partners' federal and state constitutional "act of production" privilege against self-incrimination. (*Fisher v United States,* 425 US 391; *In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990,* 741 F Supp 1059; *Boyd v United States,* 116 US 616; *United States v Hubbell,* 530 US 27; *Prudential Sec. v Brigianos,* 233 AD2d 18; *[Under Seal] v United States,* 634 F Supp 732; *United States v Fox,* 721 F2d 32; *In re Grand Jury Subpoena Duces Tecum Dated Nov. 13, 1984,* 616 F Supp 1159.) IV. The New York Constitution continues to protect private personal and business papers. (*Matter of Grand Jury Subpoena [Bekins Record Stor. Co.],* 62 NY2d 324; *United States v Doe,* 465 US 605; *People v Defore,* 242 NY 13; *People ex rel. Ferguson v Reardon,* 197 NY 236; *People ex rel. Kenny v Adams,* 292 NY 65; *People v Laino,* 10 NY2d 161; *People v Copicotto,* 50 NY2d 222; *Couch v United States,* 409 US 322.) V. All or the vast majority of the documents demanded in the subpoena are not "required records." (*Gross v United States,* 390 US 62; *People v Doe,* 59 NY2d 655; *Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, Y., M.D., P.C. v Kuriansky,* 69 NY2d 232.) VI. The subpoena violates the attorney-client and attorney work product privileges of the law firm, the individual partners, and their clients. (*In re Grand Jury Proceedings,* 219 F3d 175; *Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, Y., M.D., P.C. v Kuriansky,* 69 NY2d 232; *Matter of Subpoena Duces Tecum to Doe [Park Assoc.—New York State Attorney Gen., Medicaid Fraud Control Unit],* 99 NY2d 434; *Matter of Stolar,* 196 Misc 2d 175; *Matter of Priest v Hennessy,* 51 NY2d 62; *Diversified Group, Inc. v Daugerdas,* 304 F Supp 2d 507; *Clarke v American Commerce Natl. Bank,* 974 F2d 127; *Fochetta v Schlackman,* 257 AD2d 546; *Teich v Teich,* 245 AD2d 41; *Matter of Jacqueline F.,* 47 NY2d 215.) VII. The subpoena violates the law firm and individual partners' rights under CPLR 2304, CPL 190.50, and Search and Seizure Clauses. (*People v Weiss,* 176 Misc 2d 496; *In re Grand Jury Proceedings,* 219 F3d 175; *United States v Fox,* 721 F2d 32; *Corporate Interiors v Pappas,* 293 AD2d 640; *Abbene v Griffin,* 208 AD2d 483; *Consentino v Schwartz,* 155 AD2d 640; *United States v Dionisio,* 410 US 1;

*Hale v Henkel,* 201 US 43; *Oklahoma Press Publ. Co. v Walling,* 327 US 186.)

*Eliot Spitzer, Attorney General,* New York City (*Peter B. Pope, Daniel Smirlock* and *Robin A. Forshaw* of counsel), for respondent. I. Because of the commands of article 190 of the Criminal Procedure Law, this Court should not determine the scope of appellants' Fifth Amendment privilege prior to the production of the subpoenaed evidence. (*Matter of Rush v Mordue,* 68 NY2d 348; *Kastigar v United States,* 406 US 441; *People v Slavin,* 1 NY3d 392; *United States v Fox,* 721 F2d 32; *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F3d 87; *Prudential Sec. v Brigianos,* 233 AD2d 18; *Matter of Momah v Rogers,* 93 NY2d 864; *People v Avant,* 33 NY2d 265; *Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 404 US 823; *Matter of Altman v Bradley,* 184 AD2d 131.) II. If this Court reaches the issue of appellants' rights against self-incrimination under the New York State Constitution, it should not craft a rule that allows appellants to veto the giving of grand jury evidence against them by their employees. (*Matter of Vanderbilt [Rosner— Hickey],* 57 NY2d 66; *Big Apple Concrete Corp. v Abrams,* 103 AD2d 609; *Bellis v United States,* 417 US 85; *People v P.J. Video,* 68 NY2d 296; *People v Harris,* 77 NY2d 434; *Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, Y., M.D., P.C. v Kuriansky,* 69 NY2d 232; *Matter of Cappetta,* 42 NY2d 1066; *Matter of Friedman v Hi-Li Manor Home for Adults,* 42 NY2d 408; *United States v White,* 322 US 694; *Matter of Havemeyer,* 17 NY2d 216.) III. The documents called for in the subpoena are records of an enterprise, not personal records, and compelling their production does not implicate the constitutional privilege against self-incrimination. (*People v Hager,* 69 NY2d 141; *United States v Doe,* 465 US 605; *Fisher v United States,* 425 US 391; *Henry v Lewis,* 102 AD2d 430; *Wilson v United States,* 221 US 361; *Matter of Sigety v Hynes,* 38 NY2d 260; *Shapiro v United States,* 335 US 1; *United States v Hubbell,* 530 US 27; *Matter of Subpoena Duces Tecum to Doe [Park Assoc.—New York State Attorney Gen., Medicaid Fraud Control Unit],* 99 NY2d 434.) IV. The documents called for do not implicate the attorney-client privilege and appellants have failed in their burden of proving that they do. (*Matter of Grand Jury Subpoena [Bekins Record Stor. Co.],* 62 NY2d 324; *People v Mitchell,* 58 NY2d 368; *Matter of Priest v Hennessy,* 51 NY2d 62; *Matter of Stolar,* 196 Misc 2d 175; *Matter of Jacqueline F.,* 47 NY2d 215; *Matter of Kaplan [Blumenfeld],* 8 NY2d 214; *Nab-Tern-Betts v City of New York,* 209 AD2d 223; *Matter of Williams & Connolly*

*v Axelrod,* 139 AD2d 806.) V. The requested records are not attorney work product. (*Hickman v Taylor,* 329 US 495; *Kinge v State of New York,* 302 AD2d 667.) VI. The County Court properly determined that the subpoena does not violate appellants' Fourth Amendment right to be free from unreasonable search and seizure. (*United States v Dionisio,* 410 US 1; *Hale v Henkel,* 201 US 43; *Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO [People],* 72 NY2d 307; *Matter of Hynes v Moskowitz,* 44 NY2d 383; *In re Nwamu,* 421 F Supp 1361; *Virag v Hynes,* 54 NY2d 437; *Blair v United States,* 250 US 273.)

## OPINION OF THE COURT

G.B. Smith, J.

The issue here is whether individual partners of a small law firm may invoke the privilege against compelled self-incrimination in response to a grand jury subpoena duces tecum, served upon the custodian of records of their firm, seeking production of firm financial and payment records, copies of retainer and closing statements, and various other records. On the central issue before us, we agree with the motion court and Appellate Division that the individual partners cannot invoke the state or federal constitutional privilege against compelled self-incrimination.

## FACTS

On June 24, 2003, the Attorney General issued a subpoena duces tecum, on behalf of a Nassau County grand jury, commanding the custodian of records of the appellant law firm to appear before the grand jury on July 7, 2003 and directing the custodian to bring and produce documents relating to the firm's personal injury cases handled from January 1, 2001 to June 24, 2003.[1] The subpoena, which did not identify the nature of the grand jury proceeding,[2] sought production of the following documents:

---

1. The schedule of documents subpoenaed indicated that the period covered for the subpoena was "January 1, 1999 to the present (unless otherwise designated)."

2. Respondent, however, provided some general information about what the matter concerned in its brief. Respondent stated, "Because of concerns that dramatic increases in the cost of motor vehicle insurance were attributable to fraud, in 2001[,] Governor [ ] Pataki appointed New York State Attorney General Eliot Spitzer [ ] special prosecutor for auto insurance fraud [*see* Executive Order (Pataki) No. 109, 9 NYCRR 5.109 (2001)]. Pursuant to

"1. All books of record (and accountant's work[ ]papers and reconciliations), including[,] but not limited to[,] General Ledgers, General Journals, Cash Disbursements Books, Cash Receipts Books, and Petty Cash Books for the period from January 1, 1999 through December 31, 2002.

"2. All financial records, including[,] but not limited to[,] personal lists, memoranda, or other documentation of monies paid and received, check registers, check stubs, cancelled checks, and bank statements for all accounts, including operating, payroll, IOLA and escrow accounts, tax returns[,] including all schedules, attachments, and accountant's work papers.

"3. Copies of all Retainer Statements filed with the Office of Court Administration by the firm and any partners and associates of the firm.

"4. Copies of all Closing Statements filed with the Office of Court Administration by the firm and any partners and associates of the firm.

"5. Regarding the aforesaid Retainer and Closing Statements, the index-numbered postal cards sent by the Office of Court Administration.

"6. Regarding the aforesaid Closing Statements, any and all records, in whatever form kept, reflecting payments to persons or entities reported to have been paid for services provided from the settlement funds, including, but not limited to, books of account such as general ledger, general journal, cash disbursement books, petty cash register (with supporting documentation), cancelled checks, money orders, correspondence, memoranda, notes, and invoices.

"7. Records of any and all payments made to any persons or entities whose services were provided,

this authority, on June 17, 2003, [respondent] filed criminal court complaints in Queens County and Nassau County charging 19 defendants with Conspiracy in the Fourth Degree in violation of Penal Law § 105.10. . . . [T]he cases charged conspiracies among lawyers, medical providers, insurance brokers, and middlemen known as 'steerers' to defraud insurance companies providing no-fault insurance."

relative to those cases for which partners and associates filed Retainer Statements, or were required to file retainer statements but did not or have not yet done so.

"8. Records of any and all payments made to persons or entities whose services were performed for the firm and in connection with no-fault personal injury matters generally and not for one client or group of clients, including for such services as investigation, referral of clients, transportation of clients, outreach, community relations, and publicity, including, but not limited to[,] books of account such as general ledger, general journal, cash disbursement books, petty cash register (with supporting documentation), cancelled checks, money orders, correspondence, memoranda, notes, and invoices.

"9. Records of any and all payments to medical practitioners, medical facilities, or any management or marketing companies representing such practitioners or facilities, for reports, records, or other goods or services.

"10. Any and all contracts, leases or agreements with medical practitioners, medical facilities or any management or marketing companies representing such practitioners or facilities, and all auxiliary documents reflecting such contracts, agreements, or leases, including rental statements, cancelled checks, tax form 1099s and correspondence.

"11. Records of all cash payments to any persons or entities, including cash books, petty cash books, diary entries, memoranda, invoices, and receipts.

"12. Records of any and all debts, open or paid, to or from all the providers of services listed above, and medical facilities, medical practitioners, management or marketing firms, including diary entries, memoranda, lists, and file notations.

"13. Copies of all Retainer Agreements obtained from clients by non-salaried employees or providers of services listed above.

"14. Copies of all Retainer Agreements obtained

from clients by any person, within or without the law firm, at a medical facility or medical practitioner[']s office.

"15. Payroll books, and tax forms 941.

"16. Records showing the names of all present and past Associate Attorneys and Partners."

On July 17, 2003, by order to show cause, appellants moved to quash the subpoena or modify its scope. Appellants argued that the subpoena violated: the individual partners' state and federal rights against compelled self-incrimination; the law firm's and individual partners' rights against unreasonable searches and seizures; and the attorney-client privilege. Appellants also argued that the subpoena was unduly burdensome and overbroad, and that the statements filed with the Office of Court Administration were confidential pursuant to 22 NYCRR 691.20 (c), and thus not subject to disclosure. Finally, in a supporting affirmation they stated that "[i]f required by this Court, and if given an opportunity to compile a privilege log, Applicants will submit a privilege log, or if compelled, a privilege log along with the compiled documents, for an in camera inspection by the Court only for the purpose of determining the availability of the claimed privileges."

By order dated September 22, 2003, Nassau County Court denied appellants' application in its entirety. By order dated May 24, 2004, the Appellate Division unanimously affirmed. Appellants appeal as of right pursuant to CPLR 5601 (b) (1).

## DISCUSSION

The constitutional privilege against compelled self-incrimination is a personal one—"it cannot be utilized by or on behalf of any organization, such as a corporation" (*United States v White*, 322 US 694, 699 [1944]). This privilege "protects the individual from any disclosure, in the form of oral testimony, documents or chattels, sought by legal process against him as a witness" (*id.*; *see* US Const Amend V; NY Const, art I, § 6). Further, "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity" (*Bellis v United States*, 417 US 85, 90 [1974], quoting *White*, 322 US at 699).

Under federal law, it is well settled that a partner in a law firm, even a small law firm, cannot rely on the federal Fifth

Amendment privilege against compelled self-incrimination "to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally" (*Bellis v United States*, 417 US 85, 88 [1974]).[3] The *Bellis* court—which also had before it a three-partner law firm—set forth two rationales for its holding. First, since the privilege against compelled self-incrimination applies only to natural individuals, neither an artificial organization nor individuals acting as representatives of that organization can invoke the privilege. In support of this rationale, the *Bellis* court stated,

> "In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations" (417 US at 90).[4]

Second, the *Bellis* court noted the lack of privacy interest a representative of an organization has in organization records

---

**3.** In *Bellis*, a former partner of a dissolved three-partner law firm was served with a subpoena directing him to appear before a federal grand jury and to bring all records in his possession pertaining to the dissolved partnership for the years 1968 and 1969. In response to the subpoena, the former partner asserted the federal Fifth Amendment privilege against compelled self-incrimination.

**4.** Quoting *United States v White*, 322 US 694, 700 (1944), the *Bellis* court further stated:

> "The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations" (*id.* at 90-91 [citations omitted]).

(*see id.* at 91-92).[5] Similarly, with regard to partnerships, the *Bellis* court noted that "partnerships may and frequently do represent organized institutional activity so as to preclude any claim of Fifth Amendment privilege with respect to the partnership's financial records" (*id.* at 93).[6]

As this Court has never expressly determined whether the New York privilege against compelled self-incrimination (NY Const, art I, § 6) applies to a partnership, and as this Court has, on occasion, afforded greater protection regarding fundamental rights than the Federal Constitution and the United States Supreme Court, we now consider whether *Bellis* should be adopted in New York.

This Court has adopted a two-pronged "interpretive" and "noninterpretive" analysis of various factors to determine if a provision of our State Constitution should be construed more broadly than its federal analog (*see People v P.J. Video*, 68 NY2d 296 [1986]). We first review the text of the state and federal constitutional provisions. "If the language of the State Constitution differs from that of its Federal counterpart, then the court may conclude that there is a basis for a different interpretation of it" (*id.* at 302 [citations omitted]). Here, there is no material textual difference between the relevant constitutional

---

5. Regarding the difficulty of maintaining a claim of privacy or confidentiality with respect to the financial records of an organized collective entity, the *Bellis* court stated:

"Control of such records is generally strictly regulated by statute or by the rules and regulations of the organization, and access to the records is generally guaranteed to others in the organization. In such circumstances, the custodian of the organization's records lacks the control over their content and location and the right to keep them from the view of others which would be characteristic of a claim of privacy and confidentiality" (*id.* at 92).

6. In determining that the *Bellis* law firm engaged in "organized institutional activity" so as to preclude a Fifth Amendment claim, the *Bellis* court considered whether the organization: (1) existed "as an independent entity apart from its individual members"; (2) was well structured "and not merely a loose, informal association of individuals"; and (3) maintained "a distinct set of organizational records, and recognize[d] rights in its members of control and access to them" (*id.* at 92, 93). Additionally, the records subpoenaed must actually be organization records held in a representative capacity rather than records of an individual held in a personal capacity (*id.* at 93).

provisions.[7] As such, this Court need only conduct a "noninterpretive" review of the constitutional provisions. A noninterpretive review "proceeds from a judicial perception of sound policy, justice and fundamental fairness" and seeks to discover, for example,

> "any preexisting State statutory or common law defining the scope of the individual right in question; the history and traditions of the State in its protection of that individual right; any identification of the right in the State Constitution as being one of peculiar State or local concern; and any distinctive attitudes of the State citizenry toward the definition, scope or protection of the individual right" (68 NY2d at 303).

A finding of these factors suggests that a broader reading of the state constitutional provision could be appropriate. Under our "noninterpretive" analysis of the state and federal constitutional provisions, we conclude that none of the factors that would suggest a broader reading of article I, § 6 are present.

Appellants contend that a partnership has a right against self-incrimination based on its unique status, in that a partnership is not a legal entity separate from its member partners. Appellants cite *Williams v Hartshorn* (296 NY 49, 51 [1946]) in which we stated that "a partnership is not to be regarded as a separate entity distinct from the persons who compose it" (*see also People v Zinke*, 76 NY2d 8 [1990]; *Caplan v Caplan*, 268 NY 445 [1935]). For many purposes, it is certainly true that a partnership is not a legally separate entity from its member partners. In the circumstances presented here, our prior cases guide us toward a different conclusion.

For example, in *Matter of Friedman v Hi-Li Manor Home for Adults* (42 NY2d 408, 416 [1977]), we observed that the right against self-incrimination reflects a policy of protecting an individual's "right to a 'private enclave' " in which he or she may lead a private life, but the constitutional guarantee against compulsory self-incrimination is concerned mostly with protecting individual civil liberties, and should not be interpreted to "insulate economic or other interests of organizations, incorpo-

---

7. Article I, § 6 of the New York State Constitution provides, in relevant part that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself or herself." The Fifth Amendment of the Federal Constitution states, in pertinent part, that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself."

rated and unincorporated, when to do so would be to frustrate appropriate governmental regulation." Citing *Bellis* approvingly, we have also stated that "[i]t is settled that a corporation has no Fifth Amendment privilege and that a custodian of corporate records may not refuse to produce them even though they may incriminate him personally" (*Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984*, 69 NY2d 232, 242 [1987]).

Appellants also rely on *Matter of Sigety v Hynes* (38 NY2d 260, 268 [1975]) for the proposition that in that case, we were not content with relying on the *Bellis* majority's definition of a "separate entity" but instead applied the Supreme Court's prior precedent of *United States v White* (322 US 694, 701 [1944]), which the *Bellis* majority "backed away from."

In *Sigety*, we stated the *White* test as whether under all the circumstances, it could be fairly said that a particular type of organization is so impersonal in the scope of membership and activities that it does not represent the purely private interests of its members. We nevertheless applied *Bellis* while noting the Supreme Court's observation that in *Bellis* itself, the result might have been different had it involved a small family partnership. Here, of course, the makeup of the law firm is identical to that in *Bellis*. Further, the "identity of language [of these provisions] supports a policy of uniformity between State and Federal Courts" (68 NY2d at 304). Accordingly, we hold that article I, § 6 affords a partnership no greater right against self-incrimination than the Fifth Amendment.

Based on the foregoing, we hereby adopt *Bellis* and hold that an individual partner of a law firm, whose firm was served with a subpoena duces tecum seeking the production of firm records, cannot rely on the constitutional privilege against compelled self-incrimination "to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally" (*Bellis*, 417 US at 88). Applying this rule to the present case, appellant law firm is a collective entity under *Bellis*. It is not a family partnership or association; exists as an independent entity apart from its individual members;[8] is a well structured, not informal, organization set up for conducting an ongoing legal practice;

---

8. This conclusion is based on the two rationales stated by the *Bellis* court and specifically on the following language: since "an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the [organization's]

and maintains a distinct set of organizational records. Additionally, the records subpoenaed were organization records held in a representative capacity rather than records of an individual held in a personal capacity—i.e., the subpoena was directed to appellant law firm's custodian of records.

In further support of our view that appellant law firm is a collective entity, we note that the term "partnership" is defined as "an association of two or more persons to carry on as co-owners a business for profit" (Partnership Law § 10 [1]). Given this definition and the fact that the privilege against compelled self-incrimination is personal (i.e., the privilege protects papers that are a person's private property or that are in a person's possession in a purely personal capacity), a partnership and its individual partners, with respect to the papers, effects and records generated in the course of conducting partnership business, should not be afforded the protections provided under the privilege. Based on the foregoing, we conclude that the individual partners of appellant law firm cannot invoke the privilege against compelled self-incrimination in order to avoid producing the documents sought by the instant subpoena. We further conclude that the privilege against compelled self-incrimination may not be invoked by an individual partner subpoenaed to produce records required to be kept by law (see Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, 69 NY2d 232 [1987]).

■ Moreover, we agree with the lower court rulings rejecting appellants' claim that the instant subpoena violates appellants' right to be protected against unreasonable searches and seizures. It is well established that "a subpoena duces tecum, unlike a search warrant, does not have to be supported by probable cause" (Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO [People], 72 NY2d 307, 315 [1988]).[9] Further, under both the State and Federal Constitutions, a subpoena does not

---

financial records would substantially undermine the . . . rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations" (id. at 90).

9. "The standard of reasonableness rather than probable cause is appropriate because of the substantial differences between a search warrant and a subpoena duces tecum. A search and seizure is conducted abruptly, without advance notice, often with force or the threat of force. A subpoena, in contrast, remains at all times under the control and supervision of a judicial officer and may be challenged before compliance through a motion to quash. Moreover,

violate an individual's right to be free from unreasonable searches and seizures when the materials sought are relevant to the investigation being conducted and the subpoena is not overbroad or unduly burdensome (*id.* at 315-316). Moreover, this Court has stated that

"a Grand Jury subpoena duces tecum, unlike an office subpoena, enjoys a presumption of validity that requires the party challenging the subpoena to demonstrate, by concrete evidence, that the materials sought have no relation to the matter under investigation. Bare assertions of the lack of relevancy will not suffice. Rather, given the ranging, exploratory nature and operation of a Grand Jury, the witness served with a subpoena must show that 'the documents are so unrelated to the subject of inquiry as to make it obvious that their production would be futile as an aid to the' Grand Jury's investigation" (*Virag v Hynes,* 54 NY2d 437, 444 [1981] [citation omitted]).

Appellants did not make a sufficient showing to rebut the presumption of validity afforded the instant subpoena. Appellants did not produce evidence that the subpoena was overbroad or that subpoenaed documents were irrelevant to the grand jury investigation. For example, the subpoena sought documents generated over a 2½ year period, documents that were generally partnership financial records and records required to be kept by law. Nor could appellants show that compliance with the subpoena would have been unduly burdensome.[10]

Next, we consider the lower court rulings that the documents sought in the subpoena are not protected under the attorney-client privilege. The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client (*see Matter of Priest v Hennessy,* 51 NY2d 62 [1980]; *see also* CPLR 4503). The person who asserts the privilege has the burden of proving the above ele-

---

the unannounced search and seizure of documents often results in serious social stigma. A subpoena is served in the same manner as any summons or other legal process and typically no stigma whatsoever attaches if it is enforced" (*Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO [People],* 72 NY2d at 315 [citations omitted]).

10. Although appellants were given two weeks to comply with the subpoena, respondent thereafter agreed to allow appellants to produce the documents sought on a rolling basis.

ments. Communications regarding "the identity of a client and information about fees paid by the client" are not generally protected under the privilege, nor are communications regarding the payment of legal fees by a third person (51 NY2d at 69).

■ Here, the lower courts found that the documents sought in the subpoena were not protected by the attorney-client privilege. The courts below considered the subpoena on its face and noted that appellants failed to meet their burden in establishing that the records sought were protected under the privilege. However, as the Attorney General conceded at oral argument, nothing prevents appellants from compiling a privilege log and asserting the privilege as to particular documents in the grand jury proceedings.[11]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, with costs.

---

**11.** In *Matter of Subpoena Duces Tecum to Jane Doe* (99 NY2d 434, 442 [2003]), a case in which a nursing home argued that subpoenaed documents were privileged under New York's Public Health Law and the federal Nursing Home Reform Act, this Court suggested that "a party seeking to protect documents from disclosure compile a privilege log in order to aid the court in its assessment of a privilege claim and enable it to undertake an in camera review."